(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:*   -   TORT   -   MOTOR VEHICLE TORT -
CONTRACT   -   EQUITABLE RELIEF   -   OTHER.)

# Commonwealth of Massachusetts

ESSEX, ss.



SUPERIOR COURT
CIVIL ACTION
No. *10 -967*

### ROBERT LEAVENS
........................................................................................................................, Plaintiff(s)

v.

### MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL
### PROTECTION and UNITED STATES COAST GUARD
........................................................................................................................, Defendant(s)

### SUMMONS

#### UNITED STATES COAST GUARD

To the above named Defendant:

You are hereby summoned and required to serve upon   **Law Offices of Jeffrey L. Roelofs, P.C.** ,

plaintiff's attorney, whose address is _____**30 Green Street, Newburyport, MA**_____ , an answer to the

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at

_____ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

WITNESS, BARBARA J. ROUSE   , Esquire, at Salem, the   **24th**

day of   **May**   , in the year of our Lord two thousand **ten**

*Thomas H. Driscoll Jr.*

*Clerk*

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

*NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office*

**Commonwealth of Massachusetts**
**County of Essex**
**The Superior Court**

CIVIL DOCKET# **ESCV2010-00967-A**

RE: **Leavens v Massachusetts Department of Environmental Protection et al**

TO:Jeffrey L Roelofs, Esquire
Law Offices of Jeffrey L Roelofs
30 Green Street
Newburyport, MA 01950

## TRACKING ORDER - X TRACK
### (Administrative Agency Appeal - 30A)

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

For claims filed pursuant to G.L. c. 30A, sec. 14, G.L. c. 249, sec. 4 or similar statutes, please also refer to Superior Court Standing Order 1-96 and the tracking deadlines set forth in that Order. In particular, note that a request for a copy of the transcript of the agency hearing testimony must be made by a party within thirty (30) days after service of the Complaint. The administrative agency whose proceedings are to be judicially reviewed shall, by way of answer, file the original or certified copy of the record of the proceeding under review (the record) within ninety (90) days after service of the Complaint. In addition, a motion pursuant to Mass. R. Civ. P. 12(c) for judgment on the pleadings and supporting memorandum shall be served within thirty (30) days of the service of the record or of the Court's decision on any motion specified in paragraph 3 of Superior Court Standing Order 1-96, whichever is later.

| STAGES OF LITIGATION | DEADLINES |
| --- | --- |
| Service of process made and return filed with the Court by | 08/05/2010 |
| case shall be resolved and judgment shall issue by **05/02/2011**. | 05/02/2011 |

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

Dated: 05/11/2010

Thomas H. Driscoll Jr.
Clerk of the Court

Location: CtRm 2 -rear (Salem)
Telephone: (978) 744-5500 ext. 414 (Brennan) or 377 (Patten)

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130 --Check website as to status of case: http://ma-trialcourts.org/tcic
947799 inidoc01 exarhose

| **CIVIL ACTION COVER SHEET** | TRIAL COURT OF MASSACHUSETTS<br>SUPERIOR COURT DEPARTMENT<br>COUNTY OF **Essex** | DOCKET NO. _____ |
|---|---|---|

**PLAINTIFF(S)**
Robert Leavens

**DEFENDANT(S)**
Massachusetts Department of Environmental
Protection and United States Coast Guard

Plaintiff Atty    Jeffrey L. Roelofs

Address    30 Green Street

City   Newburyport   State  MA   Zip Code   01950

Tel. 978-462-7600     BBO#    628645

Type Defendant's Attorney Name

Defendant Atty

Address

City                State          Zip Code

**TYPE OF ACTION AND TRACK DESIGNATION** (See reverse side)

| CODE NO. | TYPE OF ACTION (specify)    TRACK | IS THIS A JURY CASE? |
|---|---|---|
| E02 | Appeal from Administrative        X<br>Agency GL c.30A | [ ] Yes   (X) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine
money damages.  For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
(Attach additional sheets as necessary)

A.    Documented medical expenses to date:
    1.    Total hospital expenses                                                              $ _____
    2.    Total doctor expenses                                                                $ _____
    3.    Total chiropractic expenses                                                       $ _____
    4.    Total physical therapy expenses                                               $ _____
    5.    Total other expenses (describe)                              Subtotal    $ _____
B.    Documented lost wages and compensation to date                               $ _____
C.    Documented property damages to date                                                  $ _____
D.    Reasonably anticipated future medical expenses                                  $ _____
E.    Reasonably anticipated lost wages and compensation to date            $ _____
F.    Other documented items of damages (describe)
                                                                                                              $ _____
G.    Brief description of plaintiff=s injury, including nature and extent of injury (describe)


                                                                                       Total $ _____

## CONTRACT CLAIMS
(Attach additional sheets as necessary)
Provide a detailed description of claim(s):

|  |
|---|

                                                                  TOTAL     $............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR
COURT DEPARTMENT

AI hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC
Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the
advantages and disadvantages of the various methods.@
Signature of Attorney of Record _____    Date:   5/7/2010
A.O.S.C. 3-2007

## CIVIL ACTION COVER SHEET INSTRUCTIONS
### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**\* CONTRACTS**

| | | |
|---|---|---|
| A01 | Services, Labor and Materials F) | |
| A02 | Goods Sold and Delivered | (F) |
| A03 | Commercial Paper | (F) |
| A08 | Sale or Lease of Real Estate | (F) |
| A12 | Construction Dispute | (A) |
| A99 | Other (Specify) | (F) |
| E03 | Claims against Commonwealth | (A) |
| | or Municipality | |

**\*TORT**

| | | |
|---|---|---|
| B03 | Motor Vehicle Negligence | (F) |
| | personal injury/property damage | |
| B04 | Other Negligence- | (F) |
| | personal injury/property damage | |
| B05 | Products Liability | (A) |
| B06 | Malpractice-MedicaL | (A) |
| B07 | Malpractice-Other (Specify) | (A) |
| B08 | Wrongful Death, G.L. c.229, s.2A | (A) |
| B15 | Defamation (Libel-Slander) | (A) |
| B19 | Asbestos | (A) |
| B20 | Personal Injury- slip & fall | (F) |
| B21 | Environmental | (F) |
| B22 | Employment Discrimination | (F) |
| B99 | Other (Specify) | (F) |
| E03 | Claims against Commonwealth | (A) |

**\* REAL PROPERTY**

| | | |
|---|---|---|
| C01 | Land Taking (eminent domain) | (F) |
| C02 | Zoning Appeal, G.L. c.40A | (F) |
| C03 | Dispute concerning title | (F) |
| C04 | Foreclosure of mortgage | (X) |
| C05 | Condominium Lien & Charges | (X) |
| C99 | Other (Specify) | (F) |
| E03 | Claims against Commonwealth | (A) |
| | or Municipality | |

**EQUITABLE REMEDIES**

| | | |
|---|---|---|
| D01 | Specific Performance of Contract | (A) |
| D02 | Reach and Apply | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of a Trust | (A) |
| D08 | Minority Stockholder's Suit | (A) |
| D10 | Accounting | (A) |
| D12 | Dissolution of Partnership | (F) |
| D13 | Declaratory Judgment G.L. c. 231A | (A) |
| D99 | Other (Specify) | (F) |

**MISCELLANEOUS**

| | | |
|---|---|---|
| E02 | Appeal from Administrative | |
| | Agency G.L. c. 30A | (X) |
| E03 | Claims against Commonwealth | |
| | or Municipality | (A) |
| E05 | Confirmation of Arbitration Awards | (X) |
| E07 | G.L. c.112, s.12S (Mary Moe) | (X) |
| E08 | Appointment of Receiver | (X) |
| E09 | General Contractor bond, | |
| | G.L. c. 149, ss. 29, 29a | (A) |
| E11 | Worker-s Compensation | (X) |
| E12 | G.L.c.123A, s.12 (SDP Commitment) | (X) |
| E14 | G.L. c. 123A, s. 9 (SDP Petition) | |
| E15 | Abuse Petition, G. L. c. 209A | (X) |
| E16 | Auto Surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L.c.12, s. 11H | (A) |
| E18 | Foreign Discovery Proceeding | (X) |
| E19 | Sex Offender Registry G.L. c. 178M, | |
| | s. 6 | (X) |
| E21 | Protection from Harassment c 258E | (X) |
| E25 | Plural Registry (Asbestos cases) | |
| E95 | \*\*Forfeiture G.L. c. 94C, s. 47 | (F) |
| E96 | Prisoner Cases | (F) |
| E97 | Prisoner Habeas Corpus | (X) |
| E99 | Other (Specify) | (X) |

**\*Claims against the Commonwealth or a municipality are type E03, Average Track, cases.**
**\*\*Claims filed by the Commonwealth pursuant to G L c 94C, s 47 Forfeiture cases are type E95, Fast track.**

TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | [ X ] Yes    [ ] |

### SUPERIOR COURT RULE 29

**DUTY OF THE PLAINTIFF.** The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, **where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).**

**DUTY OF THE DEFENDANT.** Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

**A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.**

**FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
MAY RESULT IN DISMISSAL OF THIS ACTION.**

COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO. ___ *10 - 967*

ROBERT LEAVENS,

             Plaintiff,

   v.

MASSACHUSETTS DEPARTMENT OF
ENVIRONMENTAL PROTECTION and UNITED
STATES COAST GUARD,

             Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

MAY - 7 2010

**COMPLAINT**

## INTRODUCTION

    1.     This is an action under M.G.L. c. 30A, § 14 for judicial review of a Final

Decision of the Massachusetts Department of Environmental Protection ("DEP") authorizing

issuance of a Final Order of Conditions to the United States Coast Guard ("USCG") under the

Massachusetts Wetlands Protection Act, M.G.L. c. 131, § 40 and implementing regulations at

310 CMR 10.00 approving the USCG's proposed lead remediation project (the "Project") at

property on Baker's Island in Salem, Massachusetts on which the USCG has historically

operated a light station (the "Light Station" or "Light Station property"). In this action, the

plaintiff also seeks declaratory and injunctive relief as related to the DEP's Final Order and the

Project more generally.

    2.     A copy of the DEP's Final Decision, which was issued on April 7, 2010, is

attached hereto as Exhibit G. A copy of the March 23, 2010 Recommended Final Decision

adopted in the DEP's Final Decision is attached as Exhibit F. The DEP has not yet issued the

1

Final Order of Conditions ("Final Order") authorized in the Final Decision (and it would be unlawful for it to do so for the reasons discussed below). Various other decisions, rulings and orders that preceded the DEP's Final Decision and that are also challenged in this appeal are attached as Exhibits A – E hereto (as identified below).

3.      The DEP's Final Decision results from deficient and flawed review proceedings, stems from administrative rulings and orders that were also flawed, and is unreasonable, arbitrary and capricious, in excess of the DEP's authority, unsupported by substantial evidence, based on substantial errors of law and incomplete and inaccurate information, and otherwise unlawful. The Final Order authorized by the DEP's Final Decision is similarly unlawful. Moreover, the USCG cannot lawfully proceed with its Project pursuant to such Final Order because, among other reasons, (a) the USCG cannot lawfully record the Final Order in the Registry of Deeds within the chain of title for the affected property (a mandatory prerequisite under the Massachusetts Wetlands Protection Act and DEP's implementing regulations) and (b) the USCG lacks other permits and approvals required for its Project. Accordingly, the plaintiff seeks a preliminary and permanent injunction prohibiting the USCG from commencing the Project until it can comply with such recording requirements and has secured all required permits and approvals.

4.      The Project, as approved through the Final Decision, will result in substantial and unique injuries to the plaintiff – who owns property abutting the Light Station property.

### JURISDICTION AND VENUE

5.      This court has jurisdiction to review the Final Decision of the Department, which was issued after an adjudicatory proceeding, pursuant to M.G.L. c. 30A, § 14(1). The court also has authority to issue declaratory and preliminary and permanent injunctive relief under, among

other statutory authority, the Wetlands Protection Act, M.G.L. c. 131, § 40, ¶ 30, M.G.L. c. 30A, § 14(3), and M.G.L. 231A, § 1.

6.     Venue is proper under the provisions of G.L. c. 30A, § 14(1)(a) because the plaintiff resides in Essex County. The Light Station is also located in Essex County.

## PARTIES

7.     Plaintiff Robert Leavens ("Leavens") resides at and owns property 385 Magnolia Avenue, Gloucester, MA 01930. Leavens also owns property located on Baker's Island shown on the Salem Tax Assessor's Map 46 as Lot 89, which land shares an approximately 200-foot common boundary with the property on which the Light Station is located. Leavens participated in the DEP's underlying permit proceedings and in the adjudicatory appeal proceedings in which the DEP's Final Decision was issued. Leavens is a person aggrieved by, and will suffer harm as a result of, the Department's Final Decision and the USCG's Project.

8.     Defendant Massachusetts Department of Environmental Protection ("DEP") is an administrative agency of the Commonwealth of Massachusetts responsible for the administration and enforcement of the Wetlands Protection Act and the regulations promulgated thereunder. It has a principle place of business at One Winter Street, Boston, Massachusetts.

9.     Defendant United States Coast Guard ("USCG") is a federal agency. The USCG is the historical operator of the Light Station, the Project proponent, and the applicant for the Final Order of Conditions unlawfully authorized to be issued through the DEP's Final Decision.

## FACTS

### Initial Project and Conservation Commission Review Proceedings

10.    On or about August 19, 2008, the USCG, through its designated agent Alfred Stambler, filed a Notice of Intent (NOI) with the Salem Conservation Commission ("the

Commission) seeking approval under the Massachusetts Wetlands Protection Act and Salem Wetlands Protection Ordinance in connection with its proposed lead remediation project (the "Project") at the Light Station property. As proposed in the NOI, the Project would impact protected wetland resource areas – including Coastal Bank, Coastal Beach, and Land Subject to Coastal Storm Flowage – associated with the USCG's proposed means of accessing the remediation areas. Specifically, the USCG proposed getting construction equipment and soils to and from the site, by mooring a "shallow-draft barge" on the beach and placing wooden "mats" on the beach and coastal bank. Contaminated soil was proposed to be transported over the wooden mats, placed on the barge, and transported to shore. Clean fill would similarly be transported to the site and remediation areas for use as backfill in excavated areas.

11.     On September 25, 2008, the Commission opened a public hearing on the NOI (DEP File No. 64-479). Alfred Stambler presented the NOI and Project to the Commission on the USCG's behalf.

12.     Prior to the opening of the public hearing, Leavens and other interested persons submitted letters to the Commission generally supporting the USCG's remediation of the Light Station property, but raising legitimate questions and comments related to the NOI and Project. Among other items, those letters pointed out that the ownership and/or lot lines of the Light Station property were in doubt and questioned whether the USCG or other federal agency owned the property as asserted in the NOI.

13.     During the public hearing on September 25, 2008, Leavens stated that the United States and/or USCG could not confirm ownership of the property, as there was no recordation of property ownership in the Essex South District Registry of Deeds. He also pointed out that, without there being any such recorded title at the registry, the USCG could not comply with the

4

provisions of the Wetlands Protection Act and implementing regulations that require an Order of Conditions to be recorded in the chain of title for the affected property prior to commencement of any work covered by the Order.  Leavens provided an affidavit from a title attorney confirming that the USCG does not have a clear and marketable title to the Light Station property.  Leavens also noted that there was anecdotal evidence that there was mercury on the property (from the removal of the Fresnel lens in the light house), that the application was incomplete and that he did not believe that the USCG was proposing lead remediation at an acceptable level in accordance with Massachusetts standards for lead in the soil.  He stated that the lead remediation was not protective of the environment.

      14.    During the Commission's September 25, 2008 meeting, John Palmer of Charter Environmental, a contractor to the USCG, stated that the USCG and its contractors would provide access to the remediation site for use by construction equipment and for the movement of contaminated soil by mooring a "shallow-draft barge" on the beach and placing wooden "mats" on the beach and coastal bank.  He stated that contaminated soil would be moved over the coastal bank to the beach and onto the barge to shore.  He stated that clean fill would be brought in over the same access route to fill in areas where contaminated soil had been excavated.

      15.    The Commission conducted a site visit on October 4, 2008, attended by several members of the Commission, several abutters and others.  The Commission requested additional information, including contours and survey information from the USCG, and requested that additional lead level testing be conducted around the engine house and jeep shed.

16.     The Commission continued their hearing on October 23, 2008, at which time the Commission's agent and the Commission noted discrepancies in the title information provided by the USCG and noted that the NOI was incomplete.

17.     The Commission continued its meeting to January 8, 2009, at which time it asked a number of technical questions of the USCG.  Leavens continued to point out that the USCG had no recorded deed for the Light Station property on record at the Essex South District Registry of Deeds and point out that, therefore, the USCG could not comply with the recording requirements for Orders of Conditions.

18.     On January 8, 2009, the Commission closed the public hearing and voted to issue an Order of Conditions approving the Project (under state and local laws), with certain conditions discussed at the hearing.  It issued a written Order of Conditions to Alfred Stambler, USCG, on January 15, 2009.  A copy of the Commission's Order of Conditions is attached as Exhibit A hereto.

19.     The Commission did so without having addressed the legitimate questions and comments of Leavens and other neighbors, without ensuring that the Project would be implemented in a manner that appropriately protected the coastal resource areas, without confirming that the USCG could comply with the applicable recording requirements, and without otherwise requiring a complete and accurate NOI.  The Commission's decision was unreasonable, arbitrary and capricious, in excess of the Commission's authority, unsupported by substantial evidence, based on substantial errors of law and incomplete and inaccurate information, and otherwise unlawful.

**Plaintiff's Request for Superseding Order of Conditions and Related Proceedings**

20.     On January 26, 2009, Leavens appealed the Commission's Order of Conditions, as issued under the state Wetlands Protection Act, by filing a request for Superseding Order of Conditions with the DEP.  Leavens also separately appealed the Commission's decision as issued under Salem's local wetlands protection ordinance to the Salem City Council (the appeal avenue specified in the ordinance).  Leavens' local appeal remains pending as of the date hereof and, as such, the Commission's local Order of Conditions is not final.

21.     On or about February 5, 2009, representatives of the USCG unlawfully recorded the Commission's Order of Conditions in the Essex South District Registry of Deeds (at Book 28300, Page 543) in the chain of title for land owned by others, including land beyond the boundaries of the Light Station property.  Alfred Stambler was listed as the grantee in the Registry of Deeds recording.

22.     On or about March 18, 2009, DEP conducted a site visit to the Light Station property in connection with Leavens' request for a Superseding Order of Conditions.

23.     On or about May 26, 2009, the USCG significantly revised its Project – specifically, as related to its proposed access route over the beach and bank.  In lieu of providing a barge and series of wooden mats to protect the beach and coastal bank (as presented in the NOI and as approved by the Commission), the new plans called for construction of an off-load ramp (20-foot by 60-foot) constructed of concrete blocks, and a riprap pad (50-foot by 25-foot).  The area of impact associated with these structures was greater than the area of impact previously proposed and approved by the Commission, and extended down to the low water level.

24.     The USCG did not, and has not to date, formally presented its revised Project to the Commission – either by way of a new NOI or a request for an amendment to the

7

Commission's previously-issued state or local Order of Conditions and there have not otherwise been, in any context, any public hearing or public comment period provided for in connection with its revised Project (in violation of, among other requirements, DEP's Project Plan Change policy, DWW Policy 91-1).

25.     On or about August 14, 2009, the DEP issued a Superseding Order of Conditions (SOC) approving the Project to Alfred Stambler, USCG.  A copy of the DEP's SOC is attached as Exhibit B hereto.

26.     The SOC substantially weakened the Commission's OOC by, among other things, removing the requirement of having a Licensed Site Professional on site and making optional the Commission's requirement that the USCG return to the Commission for an amended OOC if further testing of the jeep shed and engine house required expanded remediation work.

27.     The DEP issued the SOC without appropriately addressing the significant Project revisions made during the DEP's review process.  The DEP also issued the SOC without having addressed the legitimate questions and comments of Leavens, without ensuring that the Project would be implemented in a manner that appropriately protected the coastal resource areas, without confirming that the USCG could comply with the applicable recording requirements, and without otherwise requiring a complete and accurate NOI.  The DEP's SOC was unreasonable, arbitrary and capricious, in excess of the DEP's authority, unsupported by substantial evidence, based on substantial errors of law and incomplete and inaccurate information, and otherwise unlawful.

28.     On or about August 15, 2009, Alfred Stambler, the USCG's designated representative in the NOI and recipient of the Commission's Order of Conditions and SOC, retired from the USCG.  On information and belief, the USCG never submitted to DEP or the

8

Commission any written notice of this change in its authorized agent as required by 310 CMR
1.01(2)(c).

## Administrative Appeal and Related Proceedings

29.     On or about August 25, 2009, Leavens filed a timely administrative appeal of the
DEP's SOC with the DEP's Office of Administrative Appeals and Dispute Resolution.

30.     On or about September 10, 2009, a scheduling order was issued in the
administrative appeal.

31.     On or about September 20, 2009, Leavens filed and served his Pre-Screening
Conference Statement.

32.     On or about September 21, 2009, MassDEP issued a Pre-hearing statement.

33.     On or about September 21, 2009, Leavens contacted Rachel Marino ("Marino")
of the USCG, who stated that she was taking over the Project for Alfred Stambler.  Marino was
not aware of the Pre-Screening Conference scheduled for September 23, 2009.

34.     On or about September 22, 2009, the Presiding Officer then assigned to the
appeal, Beverly Coles-Roby, issued an Order in response to an email from R. Marino (USCG ),
in which Marino stated that she did not receive notice of the Pre-Screening Conference.
Presiding Officer Coles-Roby treated the request as a "Motion to Continue Pre-Screening
Conference," and stated that "the applicant has demonstrated good cause for the continuance," as
the USCG purportedly had not assigned legal counsel to the case.

35.     On or about November 3, 2009, Leavens and the DEP enter into negotiations
regarding five outstanding issues and concerns of Leavens.  Agreement was made on three issues
to be addressed in any Final Order of Conditions, as related to:  (1) testing and, as necessary,
remediation around the jeep shed and fog horn/engineer house buildings (with amended OOC);

(2) use of the temporary rip-rap "crash pad" on the beach for no more than 90 days, and (3) submission of the revised Project plans to the Salem Conservation Commission for review (pursuant to DEP's Project Plan Change policy, DWW Policy 91-1).

36.     Outstanding issues that remained to be resolved in the adjudicatory appeal related to (1) the inability of the USCG to record the Order of Conditions in the chain of title of the affected property (see G.L. c. 131, § 40 and 310 CMR 10.05 (4)), and (2) the proposed remediation level of 400 mg/kg, which is below the state-required level of 300 mg/kg as required for appropriate protection of the environment, human health, and public welfare.

37.     On or about November 9, 2009, the USCG issued its Pre-Screening Conference Statement.

38.     On or about November 18, 2009, the USCG issued an amended Pre-Screening Conference Statement.  In that statement, the USCG admitted that it does not hold title to the Light Station property, stating that "The Coast Guard does not hold title to any property in its own name because neither the agency nor any official thereof has the statutory requirement to hold title to real property."  Its amended statement also stated that "USCG lawyers working on real property issues routinely deal with properties for which there is no recorded instrument of conveyance and/or any copy of such instrument in agency files."

39.     On or about November 10, 2009, a Pre-Screening Conference was held at DEP's Northeast Regional office.  During that conference, USCG representatives confirmed that the USCG did not have a recordable title instrument for the Light Station property and that no such instrument for the Light Station property was recorded at the Essex South District Registry of Deeds.

40.     On or about December 4, 2009, Presiding Officer Coles-Roby issued a Pre-Screening Conference Report and Order.  That Order misstated and/or mischaracterized the "issues for resolution" that the parties had agreed to at the Pre-Screening Conference.   A copy of that Order is attached as Exhibit C hereto.  The Order misidentified the issues as follows:

> 1.  Whether the United States holds recordable title to the real property where the work is proposed to take place?
>
> 2.  Whether the remediation of the lead contaminated soils is sufficient under the Massachusetts Contingency Plan, 310 CMR 40.0000 et seq.?

41.     On or about December 7, 2009, Presiding Officer Coles-Roby issued an Order to remove a witness from Leavens' witness list, Kevin Cornacchio, the Chairman of the Salem Conservation Commission at the time it issued the Order of Conditions for this Project.  A copy of that Order is attached as Exhibit D.  That Order was issued without justification and without Leavens' consent.  Leavens objected to this Order and filed and served a motion to have Mr. Cornacchio reinstated as one of his witnesses.

42.     On or about December 7, 2009 (and again thereafter), Leavens filed and served a motion to amend the Pre-Screening Conference Report and Order – objecting to, among other portions of it, the inaccurate statements of the "issues for adjudication."  The first issue, more accurately, is whether the USCG can comply with the requirement that the Order of Conditions be recorded at the registry within the chain of title of the property where it does not have any recorded title instrument.  The second stated issue was accurate, but incomplete in that it did not encompass the broader question of whether a more stringent and/or comprehensive cleanup is or will be required to appropriately protect the environmental, public health and public welfare – as required under the Massachusetts Contingency Plan.

11

43.     On or about December 22, 2009, Presiding Officer Coles-Roby issued an "Order on Motion to Amend Pre-Screening Conference Report and Order.  A copy of that Order is attached as Exhibit E.  In that Order, she addressed some of Leavens' objections to the Pre-Screening Conference Ruling and Order, but refused to correct the two stated issues for adjudication, to amend the schedule, or to allow Mr. Cornacchio to remain as one of Leavens' witnesses.

44.     The Presiding Officer's December 4 Pre-Screening Conference Report and Order, December 7 Order, and December 22 Order (to the extent it denied Mr. Leavens' requests for amendment), were unreasonable, arbitrary and capricious, in excess of the Presiding Officer's authority, unsupported by substantial evidence, based on substantial errors of law and incomplete and inaccurate information, and otherwise unlawful.

45.     On or about December 28, 2009, Leavens filed and served a motion objecting to Presiding Officer Cole-Roby's December 22 Order and her refusal to amend the stated issues for adjudication.

46.     On or about December 30, 2009, DEP filed a Motion for Summary Decision.

47.     On or about January 7, 2010, Leavens responded to the DEP's Motion for Summary Decision.

48.     On or about February 5, 2010, Presiding Officer Coles-Roby issued an Order to show cause why the case should not be dismissed.

49.     On or about February 10, 2010, the USCG (Merino) filed a Joint Motion to Cancel Hearing, with a notation that three parties – not including Leavens, the Petitioner – have reached agreement on two issues, and attaching a draft settlement agreement and a Joint Motion to Approve the Settlement Agreement (submitted by the three agreeing parties).

50.     On or about February 12, 2010, Leavens filed and served responses to the Order to Show Cause and the Joint Motions submitted on February 10.

51.     On February 12, 2010, DEP circulated a notice to all parties stating that the administrative appeal was being transferred from Presiding Officer Coles-Roby to Pamela Harvey.  Presiding Officer Harvey also circulated a docket sheet and  requested that the parties provide corrections to the docket sheet.

52.     On or about February 16, 2010, Leavens filed a Motion to Correct Errors and Omissions in the Proceedings, Docket and Filings.  A significant number of filings by Leavens had not been docketed and had been omitted from the record.  In his motion, Leavens requested numerous corrections to the docket and brought to the DEP's attention a number of procedural flaws in the hearing process.

53.     The established deadline for the Recommended Final Decision was March 18, 2010.

54.     On or about March 23, 2010, Presiding Officer Harvey issued a Recommended Final Decision.  A copy of the Recommended Final Decision is attached as Exhibit F hereto.

55.     In the Recommended Final Decision, Presiding Officer Harvey concluded "that a Final Order may be issued to the U.S.C.G. despite the recording issues asserted by the Petitioner and that the provisions related to the standard for lead remediation that may not be adjudicated in this forum."

56.     The Recommended Final Decision states, among other things, the following:

> ➢ "The Department does not view recordation as a prerequisite to the issuance of an Order, but instead views a failure to record as a violation of the Order which is subject to the exercise of enforcement discretion" (p. 5).

> ➢ "The purpose of the recordation requirement is to provide notice of the existence of the Order, most importantly to prospective or subsequent

13

purchasers . . . . Thus, it is the Essex National Heritage Commission, the entity to which the property will be transferred, that is potentially most directly affected by the recordation requirement."

57.     As related to the recording issue, the Recommended Final Decision includes two "recommendations." The first is that the DEP provide Leavens and the Essex National Heritage Commission (ENHC), as prospective owner of the Light Station property, with copies of the Final Order of Conditions with the Final Decision at the same time they are sent to the USCG. The second is that the Final Order include a condition requiring the USCG to ensure that the Final Order and the Certificate of Compliance is referenced or recorded with the quit claim deed that will be created to memorialize the conveyance to the Essex National Heritage Commission (ENHC). However, ENHC is not a current owner of the Light Station property, was not a co-applicant for the Order of Conditions, and was not a party to the administrative proceedings before the DEP, and there is currently no deed or other instrument of title with respect to which the Final Order of Conditions can be recorded in the chain of title – prior to implementation of the Project or the potential future sale of the property to ENHC.

58.     On April 7, 2010, DEP Commissioner Laurie Burt issued a Final Decision adopting the Recommended Final Decision. A copy of the Final Decision is attached as Exhibit G hereto.

59.     The Final Decision notes that a motion for reconsideration must be filed with the Case Administrator and served on all parties within seven business days of the postmark date of the decision, and also that any complaint seeking judicial review filed in Superior Court "must be filed in the Court within thirty days of receipt of this Decision."

60.     The DEP's Final Decision results from deficient and flawed review proceedings, stems from administrative rulings and orders that were also flawed, and is unreasonable,

14

arbitrary and capricious, in excess of the DEP's authority, unsupported by substantial evidence, based on substantial errors of law and incomplete and inaccurate information, and otherwise unlawful. The Final Order authorized by the DEP's Final Decision is similarly unlawful.

61.     The DEP lacks the authority under M.G.L. 131, § 40 to tie a Final Order to a deed subsequent.

62.     The DEP erred in its interpretation of and application of the recording requirements applicable to Final Orders of Conditions, as provided in the Wetlands Protection Act and DEP's regulations. It also misconstrued the purpose of those requirements and the importance of those requirements to ensuring, among other things, (1) that the approved work is authorized by the actual owners of the property on which the work is proposed, (2) that the approved work will be completely in accordance with the Order of Conditions and in a timely manner, and (3) that the issuance of the Order of Conditions and subsequent work is done in a manner and recorded in a manner such that there is no resulting adverse impacts to the title of the property at issue (or abutting properties).

63.     Among the other issues and errors noted above and in Leavens submittals to the DEP in the administrative proceedings:

   a.  The DEP lacks the authority under M.G.L. 131, § 40 to tie a Final Order to a deed subsequent.

   b.  The DEP erred in its mischaracterization and misunderstanding of the issues in dispute and to be adjudicated in the administrative appeal;

   c.  The DEP erred in its interpretation of and application of the recording requirements applicable to Final Orders of Conditions, as provided in the Wetlands Protection Act and DEP's regulations.

15

d. The DEP misconstrued the purpose of those requirements and the importance of those requirements to ensuring, among other things, (1) that the approved work is authorized by the actual owners of the property on which the work is proposed, (2) that the approved work will be completely in accordance with the Order of Conditions and in a timely manner, and (3) that the issuance of the Order of Conditions and subsequent work is done in a manner and recorded in a manner such that there is no resulting adverse impacts to the title of the property at issue (or abutting properties).

e. The DEP erred in issuing a Final Order of Conditions for the Project as it was significantly revised during the DEP review process – without requiring a new Notice of Intent or, at the very least, an additional public hearing process before the Conservation Commission.

f. The DEP erred in issuing a Final Order of Conditions for the revised Project where the revised Project had not undergone pre-permitting review pursuant to the Massachusetts Environmental Policy Act (MEPA), M.G.L. c. 30, §§ 61-62I, and MEPA's implementing regulations at 301 CMR 11.00 – and where the August 7, 2009 Certificate of the Secretary of Energy and Environmental Affairs on the USCG's Environmental Notification Form requires the filing of a Notice of Project Change for Project revisions of the sort made by the USCG during the DEP's review process.

g. The DEP erred in its refusal to evaluate in any meaningful way the USCG's proposed cleanup levels, the sufficiency of the investigation conducted at the site to date (and related need for further investigation and remediation), and the

impacts that the remediation Project as currently proposed will have on wetland resources – particularly where the USCG's investigation to date is incomplete. Among other issues, if the Project does not accomplish appropriately stringent cleanup levels in all impacted areas of the property, (1) the residual contamination may contaminate those resources, and (2) there will be a need to conduct additional remediation in the future – which will involve duplication of the same resource area impacts currently proposed. These factors must be considered in connection with DEP's obligation to evaluate alternatives for avoiding, minimizing, and mitigating adverse impacts to wetland resources.

h. The DEP erred in issuing a Final Order of Conditions that it already knows the USCG cannot comply with as related to the recording requirements. DEP's "recommended" solutions do not cure the defect.

64. Moreover, even if the Final Order of Conditions authorizing the work were valid, the USCG cannot lawfully proceed with its Project pursuant to such Final Order because, among other reasons, (a) the USCG cannot lawfully record the Final Order in the Registry of Deeds within the chain of title for the affected property, (b) the USCG lacks other permits and approvals required for its Project, including among others, the following:

a. A final Order of Conditions from the Commission under Salem's wetlands protection ordinance – for which it submitted a Notice of Intent and received, but which Leavens has appealed, with the appeal still pending;

b. A modified Order of Conditions from the Commission under Salem's wetlands protection ordinance;

17

    c. A Certificate under MEPA on a Notice of Project Change relating to the Project

       as it was revised during the DEP review process and as is likely to be revised in

       light of additional sampling conducted or to be conducted at the Property.

    d. Permits and/or licenses from the US Army Corps.

## COUNT I
### (M.G.L. c. 30A, § 14(1) – Appeal of Agency Decisions)

65.     Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1 through 64 above as though fully set forth here.

66.     The DEP's proceedings – including those related to Leavens' request for SOC and the subsequent administrative appeal proceedings – were deficient and flawed.

67.     The DEP's Final Decision, the preceding Recommended Final Decision, orders and rulings issued by the Presiding Officer in the administrative appeal, and the Final Order of Conditions authorized by the Final Decision (but not yet issued) are unreasonable, arbitrary and capricious, in excess of the DEP's authority, unsupported by substantial evidence, based on substantial errors of law and incomplete and inaccurate information, and otherwise unlawful. Accordingly, pursuant to M.G.L. c. 30A, § 14(1), they should be annulled.

## COUNT II
### (c. 231A, § 1 – Declaratory Judgment)

68.     Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 67 above as though fully set forth here.

69.     There is an actual controversy between the plaintiff and the Defendants regarding the issues identified in the preceding Paragraphs, including among others:

    a. Whether the DEP's Final Decision and Final Order of Conditions are valid and

       effective and/or whether they should be annulled pursuant to Count I;

18

b. Whether the Final Order authorized by the DEP's Final Decision is similarly unlawful;

c. Whether DEP has the authority to issue a Final Order of Conditions when, as here, it knows and acknowledges that compliance with the Final Order and related regulations is not possible;

d. Whether DEP must evaluate the proposed cleanup standards and sufficiency of the investigation work completed in connection with its evaluation of potential adverse impacts to wetland resource areas and alternatives for avoiding, minimizing, and mitigating those impacts.

e. Even if the DEP's Final Order of Conditions is held to be valid, whether the USCG can lawfully proceed with its Project where

  i. it cannot comply with the recording requirements of the Massachusetts Wetlands Protection Act and DEP's implementing regulations;

  ii. it lacks other permits and approvals required for its Project.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiff requests that the Court:

1. Grant a Short Order of Notice for a stay of enforcement and/or preliminary injunctive relief;

2. Issue a stay of enforcement of the DEP's Final Decision and Final Order of Conditions, pursuant to G.L. c. 30A, § 14(3), and a preliminary injunction prohibiting the commencement of any work on the Project pursuant to the Final Order of Conditions in order to prevent the issues in this case from becoming

moot, and to safeguard the public interest in protecting wetland resources, pending the completion of judicial review before this court;

3. Annul the Final Decision of the Department;

4. Declare that

    a. the DEP's Final Decision and Final Order of Conditions are not valid;

    b. the USCG cannot comply with the applicable pre-construction recording requirements by recording the Final Order and/or Certificate of Compliance with a deed subsequent – after the work has been completed;

    c. DEP lacks the authority to issue a Final Order of Conditions when, as here, it knows and acknowledges that compliance with the Final Order and related regulations is not possible;

    d. DEP must evaluate the proposed cleanup standards and sufficiency of the investigation work completed in connection with its evaluation of potential adverse impacts to wetland resource areas and alternatives for avoiding, minimizing, and mitigating those impacts.

    e. Even if the Final Order of Conditions were valid, work pursuant to the Order of Conditions cannot proceed until the USCG has

        i. complied with the pre-commencement recording requirements;

        ii. secured all other permits/approvals required for its revised Project.

3. Award the plaintiff his costs in this action; and

4. Grant the plaintiff such other relief as the Court deems just and proper.

Respectfully submitted,

ROBERT LEAVENS,

By his attorney,

Jeffrey L. Roelofs (BBO# 628645)
LAW OFFICES OF JEFFREY L. ROELOFS, P.C.
30 Green Street
Newburyport, MA 01950
Tel:  (978) 462-7600
jlr@roelofslaw.com

Dated:  May 7, 2010

21

# Exhibit A



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
# WPA Form 5 – Order of Conditions
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

64-479

## A. General Information

**Important:**
When filling out forms on the computer, use only the tab key to move your cursor - do not use the return key.

1. From:  Salem
Conservation Commission

2. This issuance is for (check one):  a. ☒ Order of Conditions     b. ☐ Amended Order of Conditions

3. To:  Applicant:

Alfred
a. First Name

Stambler
b. Last Name

U.S. Coast Guard
c. Organization

300 Metro Center Boulevard
d. Mailing Address

Warwick
e. City/Town

RI
f. State

02886
g. Zip Code

4. Property Owner (if different from applicant):

a. First Name

b. Last Name

US Coast Guard
c. Organization

same as above
d. Mailing Address

e. City/Town     f. State

g. Zip Code

5. Project Location:

Bakers Island Light-Coast Guard Property
a. Street Address

Salem
b. City/Town

46
c. Assessors Map/Plat Number

124
d. Parcel/Lot Number

Latitude and Longitude, if known:

42 deg. 32' 12" N
e. Latitude

70 deg. 47' 11" W
f. Longitude

6. Property recorded at the Registry of Deeds for (attach additional information if more than one parcel):

Essex
a. County

b. Certificate Number (if registered land)

Book 1637 and Sessions Records July 1796,
March 1803, April 1901

39, 53, 442 and 443
d. Page

7. Dates:  August 19, 2008
a. Date Notice of Intent Filed

January 8, 2009
b. Date Public Hearing Closed

January 15, 2009
c. Date of Issuance

8. Final Approved Plans and Other Documents (attach additional plan or document references as needed):

Appendix B: Lead Remediation
a. Plan Title

Drawn by: AMS
b. Prepared By

Checked by: PMG
c. Signed and Stamped by

d. Final Revision Date

e. Scale

Figure 2.1 Lead Remediation, Site Layout and Environmental Protection
Plan submitted by Charter Environmental

g. Date



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands

# WPA Form 5 – Order of Conditions

Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

64-479

---

## B. Findings

1.  Findings pursuant to the Massachusetts Wetlands Protection Act:

    Following the review of the above-referenced Notice of Intent and based on the information provided in this application and presented at the public hearing, this Commission finds that the areas in which work is proposed is significant to the following interests of the Wetlands Protection Act. Check all that apply:

    a. ☒ Public Water Supply    b. ☐ Land Containing Shellfish   c. ☐ Prevention of Pollution

    d. ☒ Private Water Supply   e. ☐ Fisheries                   f. ☐ Protection of Wildlife Habitat

    g. ☒ Groundwater Supply     h. ☐ Storm Damage Prevention  i. ☐ Flood Control

2.  This Commission hereby finds the project, as proposed, is: (check one of the following boxes)

    **Approved** subject to:

    a. ☒ the following conditions which are necessary in accordance with the performance standards set forth in the wetlands regulations. This Commission orders that all work shall be performed in accordance with the Notice of Intent referenced above, the following General Conditions, and any other special conditions attached to this Order. To the extent that the following conditions modify or differ from the plans, specifications, or other proposals submitted with the Notice of Intent, these conditions shall control.

    **Denied** because:

    b. ☐ the proposed work cannot be conditioned to meet the performance standards set forth in the wetland regulations. Therefore, work on this project may not go forward unless and until a new Notice of Intent is submitted which provides measures which are adequate to protect these interests, and a final Order of Conditions is issued. **A description of the performance standards which the proposed work cannot meet is attached to this Order.**

    c. ☐ the information submitted by the applicant is not sufficient to describe the site, the work, or the effect of the work on the interests identified in the Wetlands Protection Act. Therefore, work on this project may not go forward unless and until a revised Notice of Intent is submitted which provides sufficient information and includes measures which are adequate to protect the Act's interests, and a final Order of Conditions is issued. **A description of the specific information which is lacking and why it is necessary is attached to this Order as per 310 CMR 10.05(6)(c).**

**Inland Resource Area Impacts:** Check all that apply below. (For Approvals Only)

3.  ☒ Buffer Zone Impacts: Shortest distance between limit of project disturbance and wetland boundary (if available)

    70
    a. linear feet

| Resource Area | Proposed Alteration | Permitted Alteration | Proposed Replacement | Permitted Replacement |
|---|---|---|---|---|
| 4. ☐ Bank | a. linear feet | b. linear feet | c. linear feet | d. linear feet |
| 5. ☐ Bordering Vegetated Wetland | a. square feet | b. square feet | c. square feet | d. square feet |
| 6. ☐ Land Under Waterbodies and Waterways | a. square feet | b. square feet | c. square feet | d. square feet |
| | e. c/y dredged | f. c/y dredged | | |



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
# WPA Form 5 – Order of Conditions
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

64-479

## B. Findings (cont.)

| Resource Area | | Proposed Alteration | Permitted Alteration | Proposed Replacement | Permitted Replacement |
|---|---|---|---|---|---|
| 7. ☐ | Bordering Land Subject to Flooding | a. square feet | b. square feet | c. square feet | d. square feet |
| | Cubic Feet Flood Storage | e. cubic feet | f. cubic feet | g. cubic feet | h. cubic feet |
| 8. ☐ | Isolated Land Subject to Flooding | a. square feet | b. square feet | | |
| | Cubic Feet Flood Storage | c. cubic feet | d. cubic feet | e. cubic feet | f. cubic feet |
| 9. ☐ | Riverfront area | a. total sq. feet | b. total sq. feet | | |
| | Sq ft within 100 ft | c. square feet | d. square feet | e. square feet | f. square feet |
| | Sq ft between 100-200 ft | g. square feet | h. square feet | i. square feet | j. square feet |

**Coastal Resource Area Impacts:** Check all that apply below.  (For Approvals Only)

| | | | | | |
|---|---|---|---|---|---|
| 10. ☐ | Designated Port Areas | Indicate size under Land Under the Ocean, below | | | |
| 11. ☐ | Land Under the Ocean | a. square feet | b. square feet | | |
| | | c. c/y dredged | d. c/y dredged | | |
| 12. ☐ | Barrier Beaches | Indicate size under Coastal Beaches and/or Coastal Dunes below | | | |
| 13. ☒ | Coastal Beaches | 0<br>a. square feet | 0<br>b. square feet | 0<br>c. c/y nourishmt. | 0<br>d. c/y nourishmt. |
| 14. ☐ | Coastal Dunes | a. square feet | b. square feet | c. c/y nourishmt. | d. c/y nourishmt. |
| 15. ☐ | Coastal Banks | a. linear feet | b. linear feet | | |
| 16. ☐ | Rocky Intertidal Shores | a. square feet | b. square feet | | |
| 17. ☐ | Salt Marshes | a. square feet | b. square feet | c. square feet | d. square feet |
| 18. ☐ | Land Under Salt Ponds | a. square feet | b. square feet | | |
| | | c. c/y dredged | d. c/y dredged | | |
| 19. ☐ | Land Containing Shellfish | a. square feet | b. square feet | c. square feet | d. square feet |
| 20. ☐ | Fish Runs | Indicate size under Coastal Banks, inland Bank, Land Under the Ocean, and/or inland Land Under Waterbodies and Waterways, above | | | |
| | | a. c/y dredged | b. c/y dredged | | |
| 21. ☐ | Land Subject to Coastal Storm Flowage | a. square feet | b. square feet | | |



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands

MassDEP File Number:

# WPA Form 5 – Order of Conditions

64-479

Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

---

## C. General Conditions Under Massachusetts Wetlands Protection Act

10. Where the Department of Environmental Protection is requested to issue a Superseding Order, the Conservation Commission shall be a party to all agency proceedings and hearings before MassDEP.

11. Upon completion of the work described herein, the applicant shall submit a Request for Certificate of Compliance (WPA Form 8A) to the Conservation Commission.

12. The work shall conform to the plans and special conditions referenced in this order.

13. Any change to the plans identified in Condition #12 above shall require the applicant to inquire of the Conservation Commission in writing whether the change is significant enough to require the filing of a new Notice of Intent.

14. The Agent or members of the Conservation Commission and the Department of Environmental Protection shall have the right to enter and inspect the area subject to this Order at reasonable hours to evaluate compliance with the conditions stated in this Order, and may require the submittal of any data deemed necessary by the Conservation Commission or Department for that evaluation.

15. This Order of Conditions shall apply to any successor in interest or successor in control of the property subject to this Order and to any contractor or other person performing work conditioned by this Order.

16. Prior to the start of work, and if the project involves work adjacent to a Bordering Vegetated Wetland, the boundary of the wetland in the vicinity of the proposed work area shall be marked by wooden stakes or flagging. Once in place, the wetland boundary markers shall be maintained until a Certificate of Compliance has been issued by the Conservation Commission.

17. All sedimentation barriers shall be maintained in good repair until all disturbed areas have been fully stabilized with vegetation or other means. At no time shall sediments be deposited in a wetland or water body. During construction, the applicant or his/her designee shall inspect the erosion controls on a daily basis and shall remove accumulated sediments as needed. The applicant shall immediately control any erosion problems that occur at the site and shall also immediately notify the Conservation Commission, which reserves the right to require additional erosion and/or damage prevention controls it may deem necessary. Sedimentation barriers shall serve as the limit of work unless another limit of work line has been approved by this Order.

NOTICE OF STORMWATER CONTROL AND MAINTENANCE REQUIREMENTS

18. **The work associated with this Order (the "Project") is** (1) ☐ **is not** (2) ☒ **subject to the Massachusetts Stormwater Standards. If the work is subject to the Stormwater Standards, then the project is subject to the following conditions:**

    a) All work, including site preparation, land disturbance, construction and redevelopment, shall be implemented in accordance with the construction period pollution prevention and erosion and sedimentation control plan and, if applicable, the Stormwater Pollution Prevention Plan required by the National Pollution Discharge Elimination System Construction General Permit as required by Stormwater Condition 8. Construction period erosion, sedimentation and pollution control measures and best management practices (BMPs) shall remain in place until the site is fully stabilized.



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
**WPA Form 5 – Order of Conditions**
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

64-479

---

## C. General Conditions Under Massachusetts Wetlands Protection Act (cont.)

b)   No stormwater runoff may be discharged to the post-construction stormwater BMPs unless and until a Registered Professional Engineer provides a Certification that:

*i.* all construction period BMPs have been removed or will be removed by a date certain specified in the Certification. For any construction period BMPs intended to be converted to post construction operation for stormwater attenuation, recharge, and/or treatment, the  conversion is allowed by the MassDEP Stormwater Handbook BMP specifications and that the BMP has been properly cleaned or prepared for post construction operation, including removal of all construction period sediment trapped in inlet and outlet control structures;

*ii.* as-built final construction BMP plans are included, signed and stamped by a Registered Professional Engineer, certifying the site is fully stabilized;

*iii.* any illicit discharges to the stormwater management system have been removed, as per the requirements of Stormwater Standard 10;

*iv.* all post-construction stormwater BMPs are  installed in accordance with the plans (including all planting plans) approved by the issuing authority, and have been inspected to ensure that they are not damaged and that they are in proper working condition;

*v.* any vegetation associated with post-construction BMPs is suitably established to withstand erosion.

c)   The landowner is responsible for BMP maintenance until the issuing authority is notified that another party has legally assumed responsibility for BMP maintenance. Prior to requesting a Certificate of Compliance, or Partial Certificate of Compliance, the responsible party (defined in General Condition 18(e)) shall execute and submit to the issuing authority an Operation and Maintenance Compliance Statement ("O&M Statement) for the Stormwater BMPs identifying the party responsible for implementing the stormwater BMPsOperation and Maintenance Plan ("O&M Plan") and certifying the following: *i.*) the O&M Plan is complete and will be implemented upon receipt of the Certificate of Compliance, and *ii.*) the future responsible parties shall be notified in writing of their ongoing legal responsibility to operate and maintain the stormwater management BMPs and implement the Stormwater Pollution Prevention Plan.

d)   Post-construction pollution prevention and source control shall be implemented in accordance with the long-term pollution prevention plan section of the approved Stormwater Report and, if applicable, the Stormwater Pollution Prevention Plan required by the National Pollution Discharge Elimination System Multi-Sector General Permit.

e)   Unless and until another party accepts responsibility, the landowner, or owner of any drainage easement, assumes responsibility for maintaining each BMP. To overcome this presumption, the landowner of the property must submit to the issuing authority a legally binding agreement of record, and acceptable to the issuing authority, evidencing that another entity has accepted responsibility for maintaining the BMP, and that the proposed responsible party shall be treated as a permittee for purposes of implementing the requirements of Conditions 18(f) through 18(k) with respect to that BMP. Any failure of the proposed responsible party to implement the requirements of Conditions 18(f) through 18(k) with respect to that BMP shall be a violation of the Order of Conditions or Certificate of Compliance. In the case of stormwater BMPs that are serving more than one lot, the legally binding agreement shall also identify the lots that will be serviced by the stormwater BMPs. A plan and easement deed that grants the responsible party access to perform the required operation and maintenance must be submitted along with the legally binding agreement.

f)   The responsible party shall operate and maintain all stormwater BMPs in accordance with the design plans, the O&M Plan, and the requirements of the Massachusetts Stormwater Handbook.



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
# WPA Form 5 – Order of Conditions
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

64-479

---

## C. General Conditions Under Massachusetts Wetlands Protection Act (cont.)

g) The responsible party shall:
1. Maintain an operation and maintenance log for the last three (3) consecutive calendar years of inspections, repairs, maintenance and/or replacement of the stormwater management system or any part thereof, and disposal (for disposal the log shall indicate the type of material and the disposal location);
2. Make the maintenance log available to MassDEP and the Conservation Commission ("Commission") upon request; and
3. Allow members and agents of the MassDEP and the Commission to enter and inspect the site to evaluate and ensure that the responsible party is in compliance with the requirements for each BMP established in the O&M Plan approved by the issuing authority.

h) All sediment or other contaminants removed from stormwater BMPs shall be disposed of in accordance with all applicable federal, state, and local laws and regulations.

i) Illicit discharges to the stormwater management system as defined in 310 CMR 10.04 are prohibited.

j) The stormwater management system approved in the Order of Conditions shall not be changed without the prior written approval of the issuing authority.

k) Areas designated as qualifying pervious areas for the purpose of the Low Impact Site Design Credit (as defined in the MassDEP Stormwater Handbook, Volume 3, Chapter 1, Low Impact Development Site Design Credits) shall not be altered without the prior written approval of the issuing authority.

l) Access for maintenance, repair, and/or replacement of BMPs shall not be withheld. Any fencing constructed around stormwater BMPs shall include access gates and shall be at least six inches above grade to allow for wildlife passage.

Special Conditions (if you need more space for additional conditions, please attach a text document):

**see attachment**

---

## D. Findings Under Municipal Wetlands Bylaw or Ordinance

1. Is a municipal wetlands bylaw or ordinance applicable?  ☒ Yes  ☐ No

2. The _____ hereby finds (check one that applies):
   Conservation Commission

   a. ☐ that the proposed work cannot be conditioned to meet the standards set forth in a municipal ordinance or bylaw specifically:

   _____
   1. Municipal Ordinance or Bylaw                                    2. Citation

   Therefore, work on this project may not go forward unless and until a revised Notice of Intent is submitted which provides measures which are adequate to meet these standards, and a final Order of Conditions is issued.



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
# WPA Form 5 – Order of Conditions
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

64-479

---

## D. Findings Under Municipal Wetlands Bylaw or Ordinance (cont.)

b. ☐ that the following additional conditions are necessary to comply with a municipal ordinance or bylaw:

_____    _____
1. Municipal Ordinance or Bylaw                                 2. Citation

3. The Commission orders that all work shall be performed in accordance with the following conditions and with the Notice of Intent referenced above. To the extent that the following conditions modify or differ from the plans, specifications, or other proposals submitted with the Notice of Intent, the conditions shall control.

The special conditions relating to municipal ordinance or bylaw are as follows (if you need more space for additional conditions, attach a text document):

_____

_____

_____

_____



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands

# WPA Form 5 – Order of Conditions
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

64-479

## E. Issuance

This Order is valid for three years, unless otherwise specified as a special condition pursuant to General Conditions #4, from the date of issuance.
Please indicate the number of members who will sign this form:
This Order must be signed by a majority of the Conservation Commission.
The Order must be mailed by certified mail (return receipt requested) or hand delivered to the applicant. A copy also must be mailed or hand delivered at the same time to the appropriate Department of Environmental Protection Regional Office, if not filing electronically, and the property owner, if different from applicant.

January 15, 2009
1. Date of Issuance

four (4)
2. Number of Signers

Signatures:

### Notary Acknowledgement

Commonwealth of Massachusetts County of ___ Essex

On this ___8___ of ___January___ ___2009___
         Day              Month        Year

Before me, the undersigned Notary Public, personally appeared ___ K.Cornacchio, A. Hamilton, K. Glidden, M. Blier, ___

proved to me through satisfactory evidence of identification, which was/were

___personally known___
Description of evidence of identification

to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

As member of ___ Salem ___ Conservation Commission
                   City/Town

```
CAREY R. DUQUES
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
August 16, 2013
```

Carey R. Duques
Signature of Notary Public

Carey R. Duques
Printed Name of Notary Public

August 16, 2013
My Commission Expires (Date)

Place notary seal and/or any stamp above

This Order is issued to the applicant as follows:

☐ by hand delivery on

___
Date

☒ by certified mail, return receipt requested, on

January 15, 2009
Date



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands

# WPA Form 5 – Order of Conditions

Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

64-479

---

## G. Recording Information

This Order of Conditions must be recorded in the Registry of Deeds or the Land Court for the district in which the land is located, within the chain of title of the affected property. In the case of recorded land, the Final Order shall also be noted in the Registry's Grantor Index under the name of the owner of the land subject to the Order. In the case of registered land, this Order shall also be noted on the Land Court Certificate of Title of the owner of the land subject to the Order of Conditions. The recording information on this page shall be submitted to the Conservation Commission listed below.

Salem
Conservation Commission

Detach on dotted line, have stamped by the Registry of Deeds and submit to the Conservation Commission.
................................................................................................................

To:

Salem
Conservation Commission

Please be advised that the Order of Conditions for the Project at:

Bakers Island-Coast Guard Property                    64-479
Project Location                                      MassDEP File Number

Has been recorded at the Registry of Deeds of:

County                                    Book                    Page

for:

Property Owner

and has been noted in the chain of title of the affected property in:

Book                                      Page

In accordance with the Order of Conditions issued on:

Date

If recorded land, the instrument number identifying this transaction is:

Instrument Number

If registered land, the document number identifying this transaction is:

Document Number

Signature of Applicant



Figure 5-1.  Location of subsurface testing



*The Commonwealth of Massachusetts*
*Executive Office of Energy and Environmental Affairs*
*100 Cambridge Street, Suite 900*
*Boston, MA 02114*

Deval L. Patrick
GOVERNOR

Timothy P. Murray
LIEUTENANT GOVERNOR

Ian A. Bowles
SECRETARY

Tel: (617) 626-1000
Fax: (617) 626-1181
http://www.mass.gov/envir

August 7, 2009

### CERTIFICATE OF THE SECRETARY OF ENERGY AND ENVIRONMENTAL AFFAIRS
### ON THE
### ENVIRONMENTAL NOTIFICATION FORM

PROJECT NAME                    : Lead Remediation at U.S. Coast Guard Bakers Island Light
PROJECT MUNICIPALITY            : Salem
PROJECT WATERSHED               : North Coastal
EEA NUMBER                      : 14450
PROJECT PROPONENT               : U.S. Coast Guard Civil Engineering Unit
DATE NOTICED IN MONITOR         : July 8, 2009

Pursuant to the Massachusetts Environmental Policy Act (MEPA) (G. L. c. 30, ss. 61-62I) and Section 11.06 of the MEPA regulations (301 CMR 11.00), I hereby determine that this project **does not require** the preparation of an Environmental Impact Report (EIR).

### Project Description

As described in the Environmental Notification Form (ENF), the project includes the excavation, removal, and disposal of 1,200 cubic yards (cy) of lead impacted soil on a 3.15 acre site on the northwest side of Bakers Island in Salem. The excavated areas will be backfilled with clean fill to achieve an average lead concentration of accessible soil of 400 milligrams/kilograms (mg/kg), and to restore existing grades. The project proposes the excavation of area around four buildings which include the keeper's and assistant keeper's buildings, the oil house and the engine house. According to the plans in the ENF, the total area of excavation is approximately 32,389 square feet (sf).

According to the ENF, estimated project impacts to wetland resource areas include 80 linear feet (1,704 sf) of Coastal Bank, 3,980 sf of Coastal Beach, and 5,684 sf of Land Subject to Coastal Storm Flowage. These impacts are associated with the construction of a temporary off-load ramp (20-foot by 60-foot) constructed of concrete blocks, and a riprap pad (50-foot by 25-foot), which are proposed to provide access to the site from the water for the proposed cleanup activities.

EEA# 14450                              ENF Certificate                          August 7, 2009

Jurisdiction and Permitting

The project is undergoing review pursuant to Section 11.03(3)(b)(1)(a) of the MEPA regulations because it requires a State Agency Action and it will result in the alteration of Coastal Bank. The project requires a Superseding Order of Conditions (SOC) from the Massachusetts Department of Environmental Protection (MassDEP), upon appeal of the Order of Conditions (OOC) issued by the Salem Conservation Commission. In addition, the project will require a Section 106 review in accordance with the National Historic Preservation Act of 1966.

The Proponent is not seeking financial assistance from the Commonwealth. Therefore, MEPA jurisdiction extends to those aspects of the project within the subject matter of required or potentially required state permits with the potential to cause Damage to the Environment as defined in the MEPA regulations. In this case, MEPA jurisdiction extends to wetlands, and historical and archaeological resources.

Review of the ENF

The Proponent has received an OOC from the Salem Conservation Commission for proposed alteration of wetland resource areas. The OOC has been appealed, and the Proponent is seeking an SOC from MassDEP (DEP File #064-0479). In response to MassDEP's comments on the ENF the Proponent has provided additional information to clarify the numerical areas of the proposed wetlands alterations associated with the project.

The project is being conducted under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), and is exempt from the notification requirements set forth in 310 CMR 40.300 of the Massachusetts Contingency Plan as a release of hazardous material emanating from a point of original application of lead-based paint (310 CMR 40.317(8)(a)). The ENF indicates that the excavated lead impacted materials will be transported off island for disposal. The OOC approved the use of a small barge to transport contaminated soil from the island and to bring clean soil to the island. As indicated in the comments from Mr. Robert Leavens, the Proponent should verify if permits from the Cities of Salem or Beverly harbormaster are required to satisfy Chapter 91 requirements for temporarily securing the barge. Following the completion of the project, the temporary off-load ramp and riprap pad will be removed using a hydraulic excavator. The area will be restored with three inches of topsoil and reseeded as mitigation. The Proponent has committed to employing erosion and sedimentation controls, such as silt fences, to protect the beach area from stormwater runoff. In addition, the Proponent relocated the access point to prohibit disturbance of the existing granite steps which lead from the existing trail to the beach.

The OOC requires that the areas surrounding the north side of the engine house and the entire area around the jeep shed shall be tested during the proposed project and that if any excavation is needed in these areas a subsequent Notice of Intent shall be submitted to the Salem Conversation Commission and MassDEP. At this time, the Proponent has not provided a description of future remediation activities in these areas and MassDEP has indicated that future activities are outside the purview of the present SOC. There is the potential for wetlands alteration if excavation of these areas is required. I am therefore requiring that a Notice of Project Change (NPC) be filed

EEA# 14450                          ENF Certificate                          August 7, 2009

with the MEPA Office for any future activity that may be proposed in these areas. The NPC will need to discuss any proposed wetlands alterations related to further remediation activities. The Proponent should consult with the MEPA Office prior to filing the NPC.

According to the ENF, the Bakers Island Light Station is listed on the National Register of Historic Places. MHC had previously requested that the Proponent conduct an intensive (locational) archaeological survey for the soil remediation project. As described in the ENF, this survey was conducted by Public Archaeological Laboratory to facilitate the transfer of the property to the Essex National Heritage Commission under the National Lighthouse Preservation Act of 2000. The results of the survey indicate that there are belowground structural remains which should be left in place and protected during the remediation activities. The survey also recommended that removal of contaminated soil should be conducted using hand tools adjacent to two identified structures: masonry stonework associated with the original tower's foundation and a stone-lined well near the keeper's building. The Proponent has incorporated protective measures into contract plans and specification for the soil excavation which include provisions for additional discovery of historical or cultural artifacts. MHC recommends that the Proponent should directly supervise their contractors and other personnel to ensure that the proposed plans and specifications are implemented accordingly.

Conclusion

Based on the information in the ENF and after consultation with relevant public agencies, I find that no further MEPA review is required at this time. The project may proceed to state permitting.

____August 7, 2009___                                        _____
        Date                                                         Ian A. Bowles

Comments received:

07/15/2009     Massachusetts Historical Commission
07/27/2009     Robert T. Leavens
07/28/2009     Massachusetts Department of Environmental Protection – NERO

IAB/PPP/ppp

3

# Exhibit B



COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENERGY & ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
NORTHEAST REGIONAL OFFICE

205B Lowell Street, Wilmington, MA  01887 • (978) 694-3200

DEVAL L. PATRICK
Governor

TIMOTHY P. MURRAY
Lieutenant Governor

IAN A. BOWLES
Secretary

LAURIE BURT
Commissioner

August 14, 2009

Robert T. Leavens
385 Magnolia Avenue
Gloucester, MA  01930

RE: WETLANDS/SALEM
DEP FILE #064-0479
Bakers Island Light
SUPERSEDING ORDER OF CONDITIONS

Dear Mr. Leavens:

The Metropolitan Boston/Northeast Regional Office of the Department of Environmental
Protection, Wetlands Program (MassDEP), has completed its review of the above-referenced file
in preparation to issuing a Superseding Order of Conditions (SOC).  Pursuant to the provisions of
the Wetlands Protection Act (the Act), Massachusetts General Laws, Chapter 131, Section 40,
MassDEP is issuing the enclosed SOC **affirming** the Salem Conservation Commission's
("SCC") Order of Conditions, based upon: 1) the information and plans submitted; 2)
information gathered during an on-site inspection by MassDEP; and 3) reasons the MassDEP has
deemed necessary to protect the statutory interests identified in the Act.

MassDEP's review of the file and site inspection confirms that the project site contains
the following Areas Subject to Protection under the Act:  Coastal Beach, Coastal Bank and Land
Subject to Coastal Storm Flowage ("LSCSF").  Said Areas are presumed to protect one or more
of the statutory interests identified in the Act as noted on Page Two of the attached Superseding
Order of Conditions.

The project site is located at Baker's Island Light in Salem, Massachusetts and entails the
proposed temporary alteration of 3,980 square feet of Coastal Beach, 1,704 square feet of Coastal
Bank and 5,684 square feet of LSCSF for the construction of a 20-foot by 60-foot off-load ramp,
a 50-foot by 25-foot rip-rap pad and includes a 50-foot wide staging area.  The off-load ramp and
rip-rap pad are proposed to allow temporary access to the beach from the water for marine
transportation and on land equipment use associated with the excavation, removal, and disposal
of lead impacted soils.  The proposed excavation portion of the project associated with the
remediation is located within the 100-foot Buffer Zone associated with Coastal Beach and
Coastal Bank.

Page 2
DEP #064-0479
Superseding Order

You appealed the Order of Conditions ("OCC") approving the project issued by the SCC on behalf of yourself as an abutter. The primary basis of your appeal was your claim that the proposed NOI as filed was incomplete and that the Registry of Deeds data provided by the applicant is inaccurate. MassDEP accepted your appeal and conducted a site visit on March 26, 2009, with you and other abutters, representatives of the applicant and representatives of the SCC. During the site visit, MassDEP observed the locations of the areas to be remediated and the locations of the proposed temporary off-load ramp and rip-rap pad. On April 1, 2009, MassDEP issued a Request for Information ("RFI") letter to the applicant. On May 27, 2009 and July 14, 2009, the applicant's consultant provided additional information to MassDEP in response to that request. The information provided included additional descriptions and clarifications of the proposed project and site plans showing the boundaries of the FEMA 100 year flood elevation, top of Coastal Beach, top of Coastal Bank and extent of LSCSF, in addition to the locations and dimensions of the off-load ramp, rip-rap pad and staging area.

The project was reviewed under the Massachusetts Environmental Policy Act ("MEPA") under EEA # 14450 and a Certificate was issued by the Secretary of Energy and Environmental Affairs on August 7, 2009 finding that the project requires no further MEPA review at this time.

It is MassDEP's position that the enclosed SOC, which approves the project as proposed and conditioned, serves to protect the statutory interests identified in the Wetlands Protection Act, M.G.L., Chapter 131, section 40. The MassDEP reviewed the revised information submitted by the applicant and has determined that the proposed project meets the performance standards under the Wetland Protection Act:

As it is not within MassDEP's authority to rule on ownership or recording issues, MassDEP finds that the registry information presented to MassDEP by the applicant meets the filing requirements for a NOI under 310 CMR 10.05(4).

Please note that if the applicant should choose to conduct any additional soil sampling within the buffer zone to a resource area, such sampling may qualify as a minor activity under 310 CMR 10.02(2)(b)1.g., "Activities that are temporary in nature, have negligible impacts, and are necessary for planning and design purposes (e.g., installation of monitoring wells, exploratory borings, sediment sampling and surveying)." Any sampling within a resource area or any remediation work proposed beyond what is permitted in this SOC would require a filing with the Salem Conservation Commission.

MassDEP reserves the right, should there be further proceedings in this case, to raise additional issues and present further evidence as may be appropriate. Should you or any concerned party dispute these findings, your attention is directed to the language at the end of the attached Order specifying the rights and procedures for appeal.

Should you have any questions relative to this decision, please contact Nancy White at (978) 694-3359.

Very truly yours,

*Rachel Freed*

Rachel Freed
Section Chief
Wetlands and Waterways Program

*Nancy M. White*

Nancy M. White
Environmental Analyst
Wetlands and Waterways Program

cc:   Conservation Commission, 120 Washington Street, Salem, MA  01970
      United States Coast Guard, c/o Alfred Stambler, 300 Metro Center Blvd,
           Warwick, RI  02886



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
**WPA Form 5 – Superseding Order of Conditions**
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

064-0479

## A. General Information

**Important:**
When filling
out forms on
the computer,
use only the
tab key to
move your
cursor - do not
use the return
key.





1. From:   Northeast Regional Office
_____
Regional Office of the Department of Environmental Protection (MassDEP)

2. This issuance is for (check one):   a. ☒ Superseding Order of Conditions   b. ☐ Superseding Amended Order of Conditions

3. To:   Applicant:

Alfred _____   Stambler _____
a. First Name                         b. Last Name

U.S. Coast Guard _____
c. Organization

300 Metro Center Boulevard _____
d. Mailing Address

Warwick _____   RI _____   02886 _____
e. City/Town                      f. State        g. Zip Code

4. Property Owner (if different from applicant):

_____   _____
a. First Name                         b. Last Name

_____
c. Organization

_____
d. Mailing Address

_____   _____   _____
e. City/Town              f. State        g. Zip Code

5. Project Location:

Bakers Island Light-Coast Guard Property _____   Salem _____
a. Street Address                                  b. City/Town

46 _____   124 _____
c. Assessors Map/Plat Number          d. Parcel/Lot Number

Latitude and Longitude, if known:   42 deg.32' 12" N   70 deg. 47' 11" W
                                    e. Latitude        f. Longitude

6. Property recorded at the Registry of Deeds for (attach additional information if more than one parcel):

Essex _____   _____
a. County                         b. Certificate Number (if registered land)

Book 1637 and Sessions Records July 1796, March 1803,   39, 53, 442 and 443
April 1901                                               d. Page
a. Book

7. Dates:   August 19, 2008          January 8, 2009          January 15, 2009
            a. Date Notice of Intent Filed   b. Date Public Hearing Closed   c. Date of OOC Issuance

8. Final Approved Plans and Other Documents (attach additional plan or document references as needed):

See Attached
a. Plan Title

_____   _____
b. Prepared By                       c. Signed and Stamped by

_____   _____
d. Final Revision Date               e. Scale

_____   _____
f. Additional Plan or Document Title                        g. Date



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
**WPA Form 5 – Superseding Order of Conditions**
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

064-0479

## B. Findings

1. Findings pursuant to the Massachusetts Wetlands Protection Act:

   Following the review of the above-referenced Notice of Intent and based on the information provided in this application and presented at the public hearing, this Commission finds that the areas in which work is proposed is significant to the following interests of the Wetlands Protection Act. Check all that apply:

   a. ☐ Public Water Supply     b. ☐ Land Containing Shellfish   c. ☐ Prevention of Pollution

   d. ☒ Private Water Supply    e. ☐ Fisheries                  f. ☐ Protection of Wildlife Habitat

   g. ☒ Groundwater Supply      h. ☐ Storm Damage Prevention    i. ☐ Flood Control

2. This Commission hereby finds the project, as proposed, is: (check one of the following boxes)

**Approved** subject to:

a. ☒ the following conditions which are necessary in accordance with the performance standards set forth in the wetlands regulations. This Commission orders that all work shall be performed in accordance with the Notice of Intent referenced above, the following General Conditions, and any other special conditions attached to this Order. To the extent that the following conditions modify or differ from the plans, specifications, or other proposals submitted with the Notice of Intent, these conditions shall control.

**Denied** because:

b. ☐ the proposed work cannot be conditioned to meet the performance standards set forth in the wetland regulations. Therefore, work on this project may not go forward unless and until a new Notice of Intent is submitted which provides measures which are adequate to protect these interests, and a final Order of Conditions is issued. **A description of the performance standards which the proposed work cannot meet is attached to this Order.**

c. ☐ the information submitted by the applicant is not sufficient to describe the site, the work, or the effect of the work on the interests identified in the Wetlands Protection Act. Therefore, work on this project may not go forward unless and until a revised Notice of Intent is submitted which provides sufficient information and includes measures which are adequate to protect the Act's interests, and a final Order of Conditions is issued. **A description of the specific information which is lacking and why it is necessary is attached to this Order as per 310 CMR 10.05(6)(c).**

**Inland Resource Area Impacts:** Check all that apply below. (For Approvals Only)

3. ☐ Buffer Zone Impacts: Shortest distance between limit of project disturbance and wetland boundary (if available)

| Resource Area | Proposed Alteration | Permitted Alteration | Proposed Replacement | Permitted Replacement |
|---|---|---|---|---|
| | | | | a. linear feet |
| 4. ☐ Bank | a. linear feet | b. linear feet | c. linear feet | d. linear feet |
| 5. ☐ Bordering Vegetated Wetland | a. square feet | b. square feet | c. square feet | d. square feet |
| 6. ☐ Land Under Waterbodies and Waterways | a. square feet | b. square feet | c. square feet | d. square feet |
| | e. c/y dredged | f. c/y dredged | | |



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
**WPA Form 5 – Superseding Order of Conditions**
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

064-0479

## B. Findings (cont.)

| Resource Area | Proposed Alteration | Permitted Alteration | Proposed Replacement | Permitted Replacement |
|---|---|---|---|---|
| 7. ☐ Bordering Land Subject to Flooding | a. square feet | b. square feet | c. square feet | d. square feet |
| Cubic Feet Flood Storage | e. cubic feet | f. cubic feet | g. cubic feet | h. cubic feet |
| 8. ☐ Isolated Land Subject to Flooding | a. square feet | b. square feet | | |
| Cubic Feet Flood Storage | c. cubic feet | d. cubic feet | e. cubic feet | f. cubic feet |
| 9. ☐ Riverfront area | a. total sq. feet | b. total sq. feet | | |
| Sq ft within 100 ft | c. square feet | d. square feet | e. square feet | f. square feet |
| Sq ft between 100-200 ft | g. square feet | h. square feet | i. square feet | j. square feet |

**Coastal Resource Area Impacts:** Check all that apply below.  (For Approvals Only)

| | | | | |
|---|---|---|---|---|
| 10. ☐ Designated Port Areas | Indicate size under Land Under the Ocean, below | | | |
| 11. ☐ Land Under the Ocean | a. square feet | b. square feet | | |
| | c. c/y dredged | d. c/y dredged | | |
| 12. ☐ Barrier Beaches | Indicate size under Coastal Beaches and/or Coastal Dunes below | | | |
| 13. ☒ Coastal Beaches | 3,980 temp<br>a. square feet | 3,980 temp<br>b. square feet | c. c/y nourishmt. | d. c/y nourishmt. |
| 14. ☐ Coastal Dunes | a. square feet | b. square feet | c. c/y nourishmt. | d. c/y nourishmt. |
| 15. ☒ Coastal Banks | 1,704 temp<br>a. linear feet | 1,704 temp<br>b. linear feet | | |
| 16. ☐ Rocky Intertidal Shores | a. square feet | b. square feet | | |
| 17. ☐ Salt Marshes | a. square feet | b. square feet | c. square feet | d. square feet |
| 18. ☐ Land Under Salt Ponds | a. square feet | b. square feet | | |
| | c. c/y dredged | d. c/y dredged | | |
| 19. ☐ Land Containing Shellfish | a. square feet | b. square feet | c. square feet | d. square feet |
| 20. ☐ Fish Runs | Indicate size under Coastal Banks, inland Bank, Land Under the Ocean, and/or inland Land Under Waterbodies and Waterways, above | | | |
| | a. c/y dredged | b. c/y dredged | | |
| 21. ☒ Land Subject to Coastal Storm Flowage | 5,684 temp<br>a. square feet | 5,684 temp<br>b. square feet | | |



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
**WPA Form 5 – Superseding Order of Conditions**
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

064-0479

---

## C. General Conditions Under Massachusetts Wetlands Protection Act

10. Where the Department of Environmental Protection is requested to issue a Superseding Order, the Conservation Commission shall be a party to all agency proceedings and hearings before MassDEP.

11. Upon completion of the work described herein, the applicant shall submit a Request for Certificate of Compliance (WPA Form 8A) to the Conservation Commission.

12. The work shall conform to the plans and special conditions referenced in this order.

13. Any change to the plans identified in Condition #12 above shall require the applicant to inquire of the Conservation Commission in writing whether the change is significant enough to require the filing of a new Notice of Intent.

14. The Agent or members of the Conservation Commission and the Department of Environmental Protection shall have the right to enter and inspect the area subject to this Order at reasonable hours to evaluate compliance with the conditions stated in this Order, and may require the submittal of any data deemed necessary by the Conservation Commission or Department for that evaluation.

15. This Order of Conditions shall apply to any successor in interest or successor in control of the property subject to this Order and to any contractor or other person performing work conditioned by this Order.

16. Prior to the start of work, and if the project involves work adjacent to a Bordering Vegetated Wetland, the boundary of the wetland in the vicinity of the proposed work area shall be marked by wooden stakes or flagging. Once in place, the wetland boundary markers shall be maintained until a Certificate of Compliance has been issued by the Conservation Commission.

17. All sedimentation barriers shall be maintained in good repair until all disturbed areas have been fully stabilized with vegetation or other means. At no time shall sediments be deposited in a wetland or water body. During construction, the applicant or his/her designee shall inspect the erosion controls on a daily basis and shall remove accumulated sediments as needed. The applicant shall immediately control any erosion problems that occur at the site and shall also immediately notify the Conservation Commission, which reserves the right to require additional erosion and/or damage prevention controls it may deem necessary. Sedimentation barriers shall serve as the limit of work unless another limit of work line has been approved by this Order.

NOTICE OF STORMWATER CONTROL AND MAINTENANCE REQUIREMENTS

18. **The work associated with this Order (the "Project") is (1) ☐ is not (2) ☒ subject to the Massachusetts Stormwater Standards. If the work is subject to the Stormwater Standards, then the project is subject to the following conditions:**

   a) All work, including site preparation, land disturbance, construction and redevelopment, shall be implemented in accordance with the construction period pollution prevention and erosion and sedimentation control plan and, if applicable, the Stormwater Pollution Prevention Plan required by the National Pollution Discharge Elimination System Construction General Permit as required by Stormwater Condition 8. Construction period erosion, sedimentation and pollution control measures and best management practices (BMPs) shall remain in place until the site is fully stabilized.



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
**WPA Form 5 – Superseding Order of Conditions**
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

064-0479

---

## C. General Conditions Under Massachusetts Wetlands Protection Act

(only applicable to approved projects)

1.  Failure to comply with all conditions stated herein, and with all related statutes and other regulatory measures, shall be deemed cause to revoke or modify this Order.

2.  The Order does not grant any property rights or any exclusive privileges; it does not authorize any injury to private property or invasion of private rights.

3.  This Order does not relieve the permittee or any other person of the necessity of complying with all other applicable federal, state, or local statutes, ordinances, bylaws, or regulations.

4.  The work authorized hereunder shall be completed within three years from the date of this Order unless either of the following apply:
    a.  the work is a maintenance dredging project as provided for in the Act; or
    b.  the time for completion has been extended to a specified date more than three years, but less than five years, from the date of issuance. If this Order is intended to be valid for more than three years, the extension date and the special circumstances warranting the extended time period are set forth as a special condition in this Order.

5.  This Order may be extended by the issuing authority for one or more periods of up to three years each upon application to the issuing authority at least 30 days prior to the expiration date of the Order.

6.  Any fill used in connection with this project shall be clean fill. Any fill shall contain no trash, refuse, rubbish, or debris, including but not limited to lumber, bricks, plaster, wire, lath, paper, cardboard, pipe, tires, ashes, refrigerators, motor vehicles, or parts of any of the foregoing.

7.  This Order is not final until all administrative appeal periods from this Order have elapsed, or if such an appeal has been taken, until all proceedings before the Department have been completed.

8.  No work shall be undertaken until the Order has become final and then has been recorded in the Registry of Deeds or the Land Court for the district in which the land is located, within the chain of title of the affected property. In the case of recorded land, the Final Order shall also be noted in the Registry's Grantor Index under the name of the owner of the land upon which the proposed work is to be done. In the case of the registered land, the Final Order shall also be noted on the Land Court Certificate of Title of the owner of the land upon which the proposed work is done. The recording information shall be submitted to this Conservation Commission on the form at the end of this Order, which form must be stamped by the Registry of Deeds, prior to the commencement of work.

9.  A sign shall be displayed at the site not less then two square feet or more than three square feet in size bearing the words,

"Massachusetts Department of Environmental Protection" [or, "MassDEP"]

"File Number  064-0479  "

**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
**WPA Form 5 – Superseding Order of Conditions**
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

064-0479

---

### C. General Conditions Under Massachusetts Wetlands Protection Act (cont.)

b)   No stormwater runoff may be discharged to the post-construction stormwater BMPs unless and until a Registered Professional Engineer provides a Certification that:
*i.* all construction period BMPs have been removed or will be removed by a date certain specified in the Certification. For any construction period BMPs intended to be converted to post construction operation for stormwater attenuation, recharge, and/or treatment, the conversion is allowed by the MassDEP Stormwater Handbook BMP specifications and that the BMP has been properly cleaned or prepared for post construction operation, including removal of all construction period sediment trapped in inlet and outlet control structures;
*ii.* as-built final construction BMP plans are included, signed and stamped by a Registered Professional Engineer, certifying the site is fully stabilized;
*iii.* any illicit discharges to the stormwater management system have been removed, as per the requirements of Stormwater Standard 10;
*iv.* all post-construction stormwater BMPs are installed in accordance with the plans (including all planting plans) approved by the issuing authority, and have been inspected to ensure that they are not damaged and that they are in proper working condition;
*v.* any vegetation associated with post-construction BMPs is suitably established to withstand erosion.

c)   The landowner is responsible for BMP maintenance until the issuing authority is notified that another party has legally assumed responsibility for BMP maintenance. Prior to requesting a Certificate of Compliance, or Partial Certificate of Compliance, the responsible party (defined in General Condition 18(e)) shall execute and submit to the issuing authority an Operation and Maintenance Compliance Statement ("O&M Statement") for the Stormwater BMPs identifying the party responsible for implementing the stormwater BMPs Operation and Maintenance Plan ("O&M Plan") and certifying the following: *i.*) the O&M Plan is complete and will be implemented upon receipt of the Certificate of Compliance, and *ii.*) the future responsible parties shall be notified in writing of their ongoing legal responsibility to operate and maintain the stormwater management BMPs and implement the Stormwater Pollution Prevention Plan.

d)   Post-construction pollution prevention and source control shall be implemented in accordance with the long-term pollution prevention plan section of the approved Stormwater Report and, if applicable, the Stormwater Pollution Prevention Plan required by the National Pollution Discharge Elimination System Multi-Sector General Permit.

e)   Unless and until another party accepts responsibility, the landowner, or owner of any drainage easement, assumes responsibility for maintaining each BMP. To overcome this presumption, the landowner of the property must submit to the issuing authority a legally binding agreement of record, and acceptable to the issuing authority, evidencing that another entity has accepted responsibility for maintaining the BMP; and that the proposed responsible party shall be treated as a permittee for purposes of implementing the requirements of Conditions 18(f) through 18(k) with respect to that BMP. Any failure of the proposed responsible party to implement the requirements of Conditions 18(f) through 18(k) with respect to that BMP shall be a violation of the Order of Conditions or Certificate of Compliance. In the case of stormwater BMPs that are serving more than one lot, the legally binding agreement shall also identify the lots that will be serviced by the stormwater BMPs. A plan and easement deed that grants the responsible party access to perform the required operation and maintenance must be submitted along with the legally binding agreement.

f)   The responsible party shall operate and maintain all stormwater BMPs in accordance with the design plans, the O&M Plan, and the requirements of the Massachusetts Stormwater Handbook.



**Massachusetts Department of Environmental Protection**
Bureau of Resource Protection - Wetlands
**WPA Form 5 – Superseding Order of Conditions**
Massachusetts Wetlands Protection Act M.G.L. c. 131, §40

MassDEP File Number:

064-0479

---

## C. General Conditions Under Massachusetts Wetlands Protection Act (cont.)

g)   The responsible party shall:
   1.   Maintain an operation and maintenance log for the last three (3) consecutive calendar years of inspections, repairs, maintenance and/or replacement of the stormwater management system or any part thereof, and disposal (for disposal the log shall indicate the type of material and the disposal location);
   2.   Make the maintenance log available to MassDEP and the Conservation Commission ("Commission") upon request; and
   3.   Allow members and agents of the MassDEP and the Commission to enter and inspect the site to evaluate and ensure that the responsible party is in compliance with the requirements for each BMP established in the O&M Plan approved by the issuing authority.

h)   All sediment or other contaminants removed from stormwater BMPs shall be disposed of in accordance with all applicable federal, state, and local laws and regulations.

i)   Illicit discharges to the stormwater management system as defined in 310 CMR 10.04 are prohibited.

j)   The stormwater management system approved in the Order of Conditions shall not be changed without the prior written approval of the issuing authority.

k)   Areas designated as qualifying pervious areas for the purpose of the Low Impact Site Design Credit (as defined in the MassDEP Stormwater Handbook, Volume 3, Chapter 1, Low Impact Development Site Design Credits) shall not be altered without the prior written approval of the issuing authority.

l)   Access for maintenance, repair, and/or replacement of BMPs shall not be withheld.   Any fencing constructed around stormwater BMPs shall include access gates and shall be at least six inches above grade to allow for wildlife passage.

☐ **SOC** Special Conditions (see the attached sheet(s) for additional conditions numbered 19 thru .

☒ **AFFIRMATION**  See the attached Order of Conditions containing General Conditions **1 – 41** and Special Conditions **42 - 47** with all plan references and/or other attachments issued by the **Salem** Conservation Commission on which is hereby affirmed and made part of this decision, as modified by the following special conditions:

**48- 56**

## SUPERSEDING ORDER OF CONDITIONS
## DEP File Number <u>064-0479</u>

### Special Conditions

48. All work shall conform with the following plans, reports and special conditions:

  - Plan titled: "Lead Remediation Bakers Island Light, Salem MA, Revised Figure 3, NOI," prepared by EA Engineering, Science, & Technology, Inc., stamped by Thomas C. Cook P.E. No. 29025, final revision date: May 21, 2009.
  - Plan titled: "Lead Remediation CG ANT Boston, Salem, MA, Bakers Island Light, Civil, Optional Excavation Plan – 400 MG/KG Cleanup Criteria," prepared by EA Engineering, Science, & Technology, Inc., final revision date: June 9, 2008.
  - Letter entitled: "U.S. Coast Guard Bakers Island Light, Salem, MA – Remediation of Lead Contaminated Soil DEP File #: 064-0479, including enclosures 1 -3," dated May 27, 2009 and signed by Rachel Marino, Environmental Branch Chief, United States Coast Guard.
  - Letter entitled: "MADEP Top of Bank Determination EA Project No. 61710.26," dated July 14, 2009 and signed by Richard Waterman, USCG Program Manager, EA Engineering, Science, and Technology, Inc.
  - Environmental Protection Plan, submitted by Charter Environmental.
  - Temporary Off Load Ramp Design, sheet 1 of 1 dated 9/18/2008, prepared by J. Palmer, Charter Environmental

49. This Superseding Order supersedes all previous Orders issued for this project, DEP File number 064-0479.

50. A copy of this Superseding Order shall be included in all construction contracts and shall supersede any conflicting requirements.

51. No work shall commence on-site until all appeal periods have elapsed and this Superseding Order of Conditions has been recorded with the Registry of Deeds and the MassDEP has been formally notified via the form provided at the end of this Order.

52. Any proposed or executed change in the plans approved under this Superseding Order shall require the applicant to file a new Notice of Intent with the Conservation Commission or to inquire of the MassDEP in writing whether the change is substantial enough to require a new filing. A copy shall be sent at the same time to the Conservation Commission.

53. Prior to commencing any work on-site, the applicant shall verify if permits from the Cities of Salem or Beverly harbormaster are required to satisfy Chapter 91 requirements for temporarily securing the barge to the coastal beach.

54. All areas of temporary resource area disturbance shall be returned to existing grades and in areas of existing vegetation, loamed and seeded.

55. Upon completion of this project, the applicant shall request a Certificate of Compliance from the MassDEP and shall submit the following information with the request:

- A written statement by a professional engineer or land surveyor registered in the Commonwealth of Massachusetts certifying compliance with the approved plans referenced above and this Superseding Order of Conditions and setting forth deviations, if any exits;
- An as-built site plan prepared by a registered land surveyor or registered professional engineer showing location and grades of the project.

56. All submittals shall be made to MassDEP and copied to the Salem Conservation Commission.

## D. Findings Under Municipal Wetlands Bylaw or Ordinance

To the extent that the Order is based on a municipal bylaw or ordinance, and not on the Massachusetts Wetlands Protection Act or regulations, the MassDEP has no jurisdiction to supersede the local bylaw order.

## E. Issuance

This Order is valid for three years, unless otherwise specified as a special condition pursuant to General Conditions #4, from the date of issuance.

Issued by the Massachusetts Department of Environmental Protection:

_Rachel Freed_
Wetland Section Chief

$8-14-09$
Date

### Notary Acknowledgement

Commonwealth of Massachusetts County of    Middlesex

On this   14th   of          August              2009
         Day                 Month                 Year

Before me, the undersigned Notary Public,    Rachel Freed
personally appeared                          Name of Document Signer

proved to me through satisfactory evidence of identification, which was/were

_Personally Known_
Description of evidence of identification

to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

_Elizabeth Salvatierra_
Signature of Notary Public

Elizabeth Sabourian
Printed Name of Notary Public

**My commission expires: February 5, 2010**

Place notary seal and/or any stamp above    My Commission Expires (Date)

This Order is issued to the applicant as follows:

☐ by hand delivery on

_____
Date

☑ by certified mail, return receipt requested, on
$8-14-09$
Date

## F. Appeals

The applicant, the landowner, any person aggrieved by the Superseding Order, Determinatin or other Reviewable Decision as defined at 310 CMR 10.04, who previously participated in the proceedings leading to this reviewable Decision, the conservation commission, or any ten (10) residents of the city or town where the land is located if at least one resident was previously a participant in the permit proceeding, are hereby notified of their right to appeal this Reviewable Decision pursuant to M.G.L. c.30A, section 10, provided the request is made by certified mail or hand delivery to the Department, along with the appropriate filing fee and a MassDEP Fee Transmittal Form within ten (10) business days of the date of issuance of this superseding Order or Determination, and addressed to:

Case Administrator
Office of Appeals and Resolution
Massachusetts Department of Environmental Protection
One Winter Street, 2nd Floor
Boston, MA 02108

A copy of the request (herein referred to as Appeal Notice) shall be at the same time be sent by certified mail or hand delivery to the Conservation Commission, the applicant, the person that requested the Superseding Order or Determination, and the issuing office of the MassDEP at:

Mass. Department of Environmental Protection
Northeast Regional Office
Wetlands and Waterways Program
205B Lowell Street
Wilmington, MA 01887

In the event that a ten resident group requested the Superseding Order or Determination, the Appeal Notice shall be served on the designated representative of the ten resident group, whose name and contact information is included in this Reviewable Decision (when relevant).

Contents of Appeal Notice
An Appeal Notice shall comply with the Department's Rules for Adjudicatory Proceedings, 310 CMR 1.01 (6) and 310 CMR 10.05 (7)(j), and shall contain the following information:

(a) the MassDEP Wetlands File Number, name of the applicant, landowner if different from applicant and address of the project;

(b) the complete name, mailing address, email address, and fax and telephone numbers of the party filing the Appeal Notice; If represented by consultant or counsel, the name, fax and telephone numbers, email address and mailing address of the representative; If a ten residents group, the same information for the group's designated representative.

(c) If theAppeal Notice is filed by a ten (10) resident group, then a demonstration of participation by at least one resident in the previous proceedings that led to this Reviewable Decision;

(d) If the Appeal Notice is filed by an aggrieved person, then a demonstration of participation in the previous proceedings that lead to this Reviewable Decision and sufficient written facts to demonstrate status as a person aggrieved;

(e) The names, telephone and fax numbers, email addresses, and mailing addresses of all other interested parties, if known;

(f) A clear and concise statement of the alleged errors contained in the Department's decision and how each alleged error is inconsistent with 310 CMR 10.00 and does not contribute to the protection of the interests identified in the Wetlands Protection Act, M.G.L. c. 131 sect 40, including reference to the statutory or regulatory provisions that the party filing the Appeal Notice alleges has been violated by the Department's decision, and the relief sought, including any specific desired changes to the Department's decision.

(g) a copy of the Department's Reviewable Decision that is being appealed and a copy of the underlying Conservation commission decision if the Reviewable Decision affirms the Conservation Commission decision;

(h) a statement that a copy of the request has been sent by certified mail or hand delivery to the applicant and conservation Commission;

(i) If asserting a matter that is Major and Complex, as defined at 310 CMR 10.04 (1), a statement requesting that the Presiding Officer make a designation of Major and Complex, with specific reasons supporting the request.

Filing Fee and Address

A copy of the Appeal Notice along with a MassDEP Fee Transmittal Form and a valid check or money order payable to the Commonwealth of Massachusetts in the amount of one hundred dollars ($100) must be mailed to:

> Commonwealth of Massachusetts
> Massachusetts Department of Environmental Protection
> Commonwealth Master Lockbox
> P.O. Box 4062
> Boston, Massachusetts 02211

The request will be dismissed if the filing fee is not paid, unless the appellant is exempt or granted a waiver. The filing fee is not required if the appellant is a city or town (or municipal agency), county, district of the Commonwealth of Massachusetts, or a municipal housing authority. The Department may waive the adjudicatory hearing filing fee pursuant to 310 CMR 4.06 (2) for a person who shows that paying the fee will create an undue financial hardship. A person seeking a waiver must file an affidavit setting forth the facts believed to support the claim of undue financial hardship together with the hearing request as provided above.

# Exhibit C



COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENERGY & ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
ONE WINTER STREET, BOSTON, MA 02108   617-292-5500

DEVAL L. PATRICK
Governor

TIMOTHY P. MURRAY
Lieutenant Governor

IAN A. BOWLES
Secretary

LAURIE BURT
Commissioner

## THE OFFICE OF APPEALS AND DISPUTE RESOLUTION

### December 4, 2009

In the Matter of
United States Coast Guard,
(Alfred Stambler)

OADR Docket No. WET-2009-041
DEP File No. 064-0479
Salem, MA

## PRE-SCREENING CONFERENCE REPORT AND ORDER

### INTRODUCTION

In this case, the petitioner, Robert T. Leavens, ("the petitioner"), challenges the

Superseding Order of Conditions ("SOC") that the Northeast Regional Office of the

Massachusetts Department of Environmental Protection ("MassDEP" or "the Department")

issued on August 14, 2009, to the United States Coast Guard. See SOC at p. 1. The petitioner

filed as an abutter to the subject property and "person aggrieved." See Petitioner's Pre-

Screening Conference Statement ¶ b at p. 1. The SOC was based on the information and plans

submitted; information gathered during an on-site inspection by MassDEP; and reasons the

Department deemed necessary to protect the statutory interests identified in G.L. chapter 131, §

40. See SOC at p. 1.

The project site is located at Baker's Island Light in Salem, Massachusetts. Id. It entails

the temporary alteration of 3,980 square feet of Coastal Beach, 1,704 square feet of Coastal Bank

This information is available in alternate format. Call Donald M. Gomes, ADA Coordinator at 617-556-1057. TDD# 1-866-539-7622 or 1-617-574-6868.

MassDEP on the World Wide Web: http://www.mass.gov/dep
♻ Printed on Recycled Paper

and 5,684 square feet of Land Subject to Coastal Storm Flowage for the construction of a 20-foot by 60-foot off-load ramp, a 50-foot by 25-foot rip-rap pad and included a 50-foot wide staging area. Id. The off-load ramp and rip-rap pad are proposed to allow temporary access to the beach from the water for marine transportation and on land equipment use associated with the excavation, removal and disposal of lead impacted soils. Id. The proposed excavation portion of the project associated with the remediation is located within the 100-foot Buffer Zone associated with Coastal Beach and Coastal Bank. Id.

The Department contends that the SOC should be affirmed. See Department's Pre-Screening Conference Statement, September 21, 2009. The petitioner on the other hand, argues among other things, that there has been no recorded chain of title of the property since 1793. See Petitioner's Pre-Screening Conference Statement, September 21, 2009. Therefore, the United States does not hold recordable title to the property where the work is proposed to take place. Id.

On November 10, 2009, I conducted a Pre-Screening Conference in this appeal in accordance with 310 CMR 1.01(5)(a)15; 310 CMR 10.05(7)(j)7.a; and a Scheduling Order that was issued to the parties on September 22, 2009.[1] The purpose of the Pre-Screening Conference was to determine the appeal's potential amenability to settlement through alternative dispute resolution or other means, and to identify the issues for resolution in this appeal. See Scheduling Order.

---

[1] Under 310 CMR 1.01(5)(a)15, the authority of Presiding Officers to prescreen appeals includes the power to conduct prescreening conferences with the parties to an appeal to discuss potential settlement of the appeal, identify the issues in an appeal, and to "issu[e] orders to parties, including without limitation, ordering parties to show cause, ordering parties to prosecute their appeal by attending prescreening conferences and ordering parties to provide more definite statements in support of their positions." Presiding Officers are also authorized to conduct simplified hearings of appeals in accordance with 310 CMR 1.01(8)(a), and issue recommended final decisions for dismissals of appeals. See 310 CMR 1.01(5)(a)15.

The first topic of discussion at the Pre-Screening Conference was potential settlement of this appeal by agreement of the parties. After the parties presented summaries of their respective positions in the appeal, they and I concluded that settlement of this appeal by agreement of the parties is not possible at this time. As a result, I informed the parties that the appeal will be resolved according to the schedule set forth below. Any party who without good cause fails to file any required materials in accordance with the schedule will be subject to sanctions pursuant to 310 CMR 1.01(10).[2]

## ISSUES FOR RESOLUTION IN THE APPEAL

At the Pre-Screening Conference, the parties agreed on the issues for resolution in this appeal. Those issues are the following:

1. Whether the United States holds recordable title to the real property where the work is proposed to take place?

2. Whether the remediation of the lead contaminated soils is sufficient under the Massachusetts Contingency Plan, 310 CMR 40.0000 et seq.?

## THE PARTIES' RESPECTIVE WITNESSES FOR HEARING

Per the Scheduling Order, I will conduct an evidentiary or Adjudicatory Hearing[3] in this appeal on **Tuesday, February 16, 2010**. The purpose of the Hearing is the cross-examination of

---

[2] Possible sanctions under 310 CMR 1.01(10) include, without limitation:
  (a) taking designated facts or issues as established against the party being sanctioned;

        (b)    prohibiting the party being sanctioned from supporting or opposing designated claims or defenses, or introducing designated matters into evidence;
        (c)    denying summarily late-filed motions or motions failing to comply with requirements of 310 CMR 1.01(4);
        (d)    striking the party's pleadings in whole or in part;
        (e)    dismissing the appeal as to some or all of the disputed issues;
        (f)    dismissing the party being sanctioned from the appeal; and
  (g) issuing a final decision against the party being sanctioned.

[3] An "Adjudicatory Hearing" is a hearing "where [the] parties may present evidence on issues of fact, and argument on issues of law and fact prior to the Commissioner's issuance of a final decision" on the appeal. 310 CMR 1.01(1)(a); 310 CMR 1.01(1)(c); 310 CMR 1.01(14)(b).

individuals ("witnesses") who have filed Pre-filed Testimony on behalf of the parties in this case, and not to give direct testimony. See 310 CMR 1.01(12)(f); 310 CMR 1.01(13)(h)3. Re-direct examination of witnesses following their cross-examination is not permitted unless authorized by the Presiding Officer, and "[i]f redirect examination is allowed by the Presiding Officer, it shall be limited to the scope of cross-examination." 310 CMR 1.01(13)(h)3.

The Scheduling Order required the parties to file Pre-Hearing Statements prior to the November 10, 2009, Pre-Screening Conference that set forth their respective positions in the appeal and "the names and addresses of [their respective] witnesses, including expert witnesses, who [would] be filing Pre-filed Testimony." See Scheduling Order. The time for parties to comply with this requirement was extended until November 18, 2009. The parties' respective witnesses for the Hearing are as follows:

| The Petitioners: | A. | Expert Witnesses: |
|---|---|---|

           (1)    Jane Mead
                    Hayes Engineering
                    603 Salem Street
                    Wakefield, MA 01880.

        **B.**    **Other Witnesses**

           (1)    Stephen Adelson, Esq.
                    Adelson, Loria and Weisman, PC
                    20 Park Plaza
                    Boston, MA 02116;

           (2)    Carey Duques
                    Salem Conservation Commission
                    120 Washington Street
                    Salem, MA 01970;

           (3)    Kevin Cornacchio
                    Salem Conservation Commission
                    120 Washington Street
                    Salem, MA 01970;

(4)    Carol Chirico
        Assistant Regional Counsel
        General Services Administration
        Federal Building 1090
        Boston, MA 02222-1047;

(5)    Carol Chirico
        Assistant Regional Counsel
        General Services Administration
        Federal Building 1090
        Boston, MA 02222-1047; and

(6)    John L. O'Brien, Registrar
        Essex South District Registry of Deeds
        45 Congress Street
        Salem, MA 01970.

**The Applicant**

(1)    Rachel Marino
        Chief Environmental; Protection Specialist
        United States Coast Guard
        Civil Engineering Unit
        Providence, Rhode Island;

(2)    Georges Bockstael
        Chief Real Property Specialist
        United States Coast Guard
        Civil Engineering Unit
        Providence, Rhode Island; and

(3)    Unnamed Witness
        United States General Services Administration
        United States Coast Guard
        Providence, Rhode Island.

**The Department:**

        Nancy White
        Wetlands Analyist
        MassDEP
        Northeast Regional Office
        205B Lowell Street
        Wilmington, MA 01887.

## SCHEDULE OF PROCEEDINGS

The Schedule for the remaining proceedings in this appeal is as follows:

| Action | Deadline or Date Scheduled |
|---|---|
| Jurisdictional, Stay and Preliminary Dispositive Motions | On or before Friday, December 18, 2009; |
| Petitioner's Pre-filed Direct Testimony and supporting memorandum of law addressing the Issues for Resolution | On or before Monday, December 28, 2009; |
| Respondent/Department's and Respondent/Applicant's Pre-filed Direct Testimony and supporting memoranda of law addressing the Issues for Resolution | On or before Monday, January 25, 2010; |
| Petitioner's Rebuttal Testimony (limited to matters asserted in Respondents' Pre-filed Testimony) | On or before Monday, February 1, 2010; |
| **Hearing** | **On Tuesday, February 16, 2010, from 9 a.m. to 4 p.m. at the Northeast Regional Office of the Department of Environmental Protection, 205B Lowell Street Wilmington, MA 01887; **Department personnel are responsible for scheduling a conference room for the Hearing and for arranging electronic or stenographic recording of the Hearing;** |
| Recommended Final Decision | On or before Thursday, March 18, 2010; |
| MassDEP Commissioner's Final Decision | On or before Monday April 19, 2010 |

December 4, 2009

Beverly Coles-Roby
Presiding Officer

SERVICE LIST

In The Matter Of:                          U.S. Coast Guard/Rachel Morino
Docket No.    WET-2009-041                 File No. 064-0479
                                           Salem

Representative                             Party

United States Coast Guard                  APPLICANTS
c/o Ms. Rachel Morino                      U.S. Coast Guard
300 Metro Center Boulevard
Warwick, RI 02886
rachelmarino@verizon.net
Rachel.marino@uscg.mil

Robert T. Leavens                          PETITIONERS
385 Magnolia Ave                           Robert Leavens
Gloucester, MA 01930
ellatory@verizon.net

Rebecca Cutting, Esq.                      DEPARTMENT
MassDEP/Office of General Counsel
One Winter Street
Boston, MA 02108
rebecca.cutting@state.ma.us

Salem Conservation Commission              CONSERVATION COMMISSION
c/o Cary Duques                            Salem Conservation Commission
120 Washington Street
Salem, MA 01970
cduques@salem.com

CC:

Rachel Freed                               DEPARTMENT
MassDEP/Bureau of Resource Protection
205B Lowell Street
Wilmington, MA 01887
Rachel.freed@state.ma.us

Nancy White                                DEPARTMENT
MassDEP/Bureau of Resource Protection
205B Lowell Street
Wilmington, MA 01887
Nancy.white@state.ma.us

Date: December 4, 2009

# Exhibit D



COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENERGY & ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
ONE WINTER STREET, BOSTON, MA 02108  617-292-5500

DEVAL L. PATRICK
Governor

TIMOTHY P. MURRAY
Lieutenant Governor

IAN A. BOWLES
Secretary

LAURIE BURT
Commissioner

## THE OFFICE OF APPEALS AND DISPUTE RESOLUTION

**December 7, 2009**

In the Matter of
United States Coast Guard,

OADR Docket No. WET-2009-041
DEP File No. 064-0479
Gloucester, MA

### ORDER

I am issuing this Order in response to the electronic mail dated December 7, 2009, from Carey Duques on behalf of the Salem Conservation Commission ("the Commission"). For the purposes of this appeal, I treated the communication as a "Motion To Revise Witness List." As grounds therefore, the Commission represented that Kevin Cornacchio no longer served as a member of the Commission. On this basis, the motion to substitute Chairman, David Pabich, as a witness for the Commission in lieu of Kevin Cornacchio is allowed.

Date: December 7, 2009

Beverly Coles-Roby
Presiding Officer

*Not within her power to allow*

This information is available in alternate format. Call Donald M. Gomes, ADA Coordinator at 617-556-1057. TDD# 1-866-539-7622 or 1-617-574-6868.

MassDEP on the World Wide Web: http://www.mass.gov/dep
♻ Printed on Recycled Paper

## SERVICE LIST

In The Matter Of:                                    U.S. Coast Guard/Rachel Morino
Docket No.     WET-2009-041                          File No. 064-0479
                                                     Salem

Representative                                       Party

United States Coast Guard                            APPLICANTS
c/o Ms. Rachel Morino                                U.S. Coast Guard
300 Metro Center Boulevard
Warwick, RI 02886
rachelmarino@verizon.net
Rachel.marino@uscg.mil

Robert T. Leavens                                    PETITIONERS
385 Magnolia Ave                                     Robert Leavens
Gloucester, MA 01930
ellatory@verizon.net

Rebecca Cutting, Esq.                                DEPARTMENT
MassDEP/Office of General Counsel
One Winter Street
Boston, MA 02108
rebecca.cutting@state.ma.us

Salem Conservation Commission                        CONSERVATION COMMISSION
c/o Cary Duques                                      Salem Conservation Commission
120 Washington Street
Salem, MA 01970
cduques@salem.com

CC:

Rachel Freed                                         DEPARTMENT
MassDEP/Bureau of Resource Protection
205B Lowell Street
Wilmington, MA 01887
Rachel.freed@state.ma.us

Nancy White                                          DEPARTMENT
MassDEP/Bureau of Resource Protection
205B Lowell Street
Wilmington, MA 01887
Nancy.white@state.ma.us

Date: December 7, 2009

# Exhibit E



COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENERGY & ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
ONE WINTER STREET, BOSTON, MA 02108  617-292-5500

DEVAL L. PATRICK
Governor

TIMOTHY P. MURRAY
Lieutenant Governor

IAN A. BOWLES
Secretary

LAURIE BURT
Commissioner

## THE OFFICE OF APPEALS AND DISPUTE RESOLUTION

### December 22, 2009

In the Matter of
United States Coast Guard,

OADR Docket No. WET-2009-041
DEP File No. 064-0479
Gloucester, MA

## ORDER ON MOTION TO AMEND PRE-SCREENING CONFERENCE REPORT AND ORDER

I am issuing this Order in response to the electronic mail dated December 7, 2009, from

the petitioner, Robert T. Leavens.  For purposes of this appeal, I treated the communication as a

"Motion To Amend Pre-Screening Conference Report and Order."[1]  See 310 CMR 1.01(11)(a).

The motion makes ten "observations, corrections and requests."  First, with respect to paragraph

5, Ms. Mead's address is changed herein to JW Mead Associates, 21 Moon Street No. 3, Boston,

MA 02113.  Second, as paragraph 6 requested, Stephen Adelson Esquire is designated as an

expert witness for the petitioner.  Third, Carol Chirico should not appear on the witness list

twice.  Fourth, the applicant United Sates Coast Guard must name its third witness no later than

---

[1] No opposition was filed by the parties.

This information is available in alternate format. Call Donald M. Gomes, ADA Coordinator at 617-556-1057, TDD# 1-866-539-7622 or 1-617-574-6868.

MassDEP on the World Wide Web: http://www.mass.gov/dep
♻ Printed on Recycled Paper

**Friday, January 8, 2010**.  All other requests are denied.  See 310 1.01(5)(a)(1)-(15); 310 CMR

1.01(11)(a).

Date:  December 22, 2009

Beverly Coles-Roby
Presiding Officer

In the Matter of United States Coast Guard,
OADR Docket No. WET-2009-041
DEP File No. 064-0479
Order on Motion to Amend Pre-Screening Conference Report and Order
Page 2 of 2

## SERVICE LIST

In The Matter Of:                               U.S. Coast Guard/Rachel Morino
Docket No.     WET-2009-041                      File No. 064-0479
                                                Salem

Representative                                  Party

United States Coast Guard                       APPLICANTS
c/o Ms. Rachel Morino                           U.S. Coast Guard
300 Metro Center Boulevard
Warwick, RI 02886
rachelmarino@verizon.net
Rachel.marino@uscg.mil

Robert T. Leavens                               PETITIONERS
385 Magnolia Ave                                Robert Leavens
Gloucester, MA 01930
ellatory@verizon.net

Rebecca Cutting, Esq.                           DEPARTMENT
MassDEP/Office of General Counsel
One Winter Street
Boston, MA 02108
rebecca.cutting@state.ma.us

Salem Conservation Commission                   CONSERVATION COMMISSION
c/o Cary Duques                                 Salem Conservation Commission
120 Washington Street
Salem, MA 01970
cduques@salem.com

CC:

Rachel Freed                                    DEPARTMENT
MassDEP/Bureau of Resource Protection
205B Lowell Street
Wilmington, MA 01887
Rachel.freed@state.ma.us

Nancy White                                     DEPARTMENT
MassDEP/Bureau of Resource Protection
205B Lowell Street
Wilmington, MA 01887
Nancy.white@state.ma.us

Date: December 22, 2009

# Exhibit F

COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENERGY AND ENVIRONMENTAL AFFAIRS
**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
ONE WINTER STREET, BOSTON, MA 02108 617-292-5500

**March 23, 2010**

| | |
|---|---|
| In the Matter of | OADR Docket No. WET-2009-041 |
| United States Coast Guard Baker's Island Light | DEP File No. 064-0479 |
| | Salem |

## RECOMMENDED FINAL DECISION

Robert T. Leavens ("the Petitioner"), challenges the Superseding Order of Conditions ("SOC") that the Northeast Regional Office of the Massachusetts Department of Environmental Protection ("Department") issued on August 14, 2009 to the United States Coast Guard ("U.S.C.G."). The project is located at Baker's Island Light in Salem, Massachusetts and is designed to remediate lead-impacted soils from lead paint at the site, which contains land regulated under the Wetlands Protection Act, M.G.L. c. 131, § 40.[1] The work is being undertaken prior to transfer of the property to the Essex National Heritage Commission pursuant to the National Historic Lighthouse Preservation Act of 2000.

---

[1] Specifically, the project entails the temporary alteration of 3,980 square feet of Coastal Beach, 1,704 square feet of Coastal Bank and 5,684 square feet of Land Subject to Coastal Storm Flowage for the construction of a 20-foot by 60-foot off-load ramp, a 50-foot by 25-foot rip-rap pad and included a 50-foot wide staging area. The off-load ramp and rip-rap pad are proposed to allow temporary access to the beach from the water for marine transportation and on land equipment use associated with the excavation, removal and disposal of lead impacted soils. The proposed excavation portion of the project associated with the remediation is located within the 100-foot Buffer Zone associated with Coastal Beach and Coastal Bank. *See* Superseding Order of Conditions, Cover Letter.

The Salem Conservation Commission issued an Order of Conditions approving the project, which the Department affirmed in its SOC. The Petitioner stated in his appeal that he is an abutter and an aggrieved person.

The Petitioner claimed that there is no recorded chain of title for the property where the work is proposed to take place, so that the Order of Conditions cannot be properly recorded as required by the wetlands regulations.[2] The Petitioner also contends that the level of lead remediation required is insufficient as compared to the standard under the Massachusetts Contingency Plan regulations at 310 CMR 40.000. The Department contends that the SOC should be affirmed because the recordation of an Order of Conditions is not a prerequisite to its issuance and an appeal of a wetlands permit may not include issues arising under the Department's waste site cleanup program.

I conclude that a Final Order may be issued on this project despite any title issues, and that the Petitioner may not challenge the adequacy of the waste site cleanup standard for lead established for this site under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and coordinating provisions under M.G.L. c. 21E, in this appeal brought under M.G.L. c. 131, § 40. In addition, the record in this matter demonstrates that the Parties agreed as to the addition of two conditions, which I recommend be added to the Final Order.

## ISSUES

1. Whether the United States holds recordable title to the real property where the work is proposed to take place?

---

[2] References to an "Order of Conditions" or an "Order" are to the final permit which has not been appealed and is recorded , which may be the local Order of Conditions issued by the conservation commission, the Superseding Order of Conditions issued by the Department, or the Final Order of Conditions issued by the Commissioner after a hearing. In some contexts where significant, I will specify to which Order I refer.

2. Whether the remediation of the lead contaminated soils is sufficient under the Massachusetts Contingency Plan, 310 CMR 40.0000 et seq.?

The Petitioner disputed the formulation of Issue 1, stating that the Parties agreed that the United States does not hold a recorded title to the property. Instead, the Petitioner framed the issue as whether the Department may issue a final order where there is not chain of title where it may be recorded.[3]   The Petitioner thus asks the related question of the consequence of the lack of a recorded title to the property. I have addressed both the issue as originally stated and its consequence in this Recommended Final Decision.

**<u>APPLICABLE REGULATIONS</u>**

As to recording of an Order, the Wetlands Protection Act provides:

> No work proposed in any notice of intention shall be undertaken until the final order, determination or notification with respect to such work has been recorded in the registry of deeds . . . .

M.G.L. c. 131, § 40.   The wetlands regulations provide:

> Prior to the commencement of any work permitted or required by the Final Order . . . the Order . . . shall be recorded in the Registry of Deeds or the Land Court for the district in which the land is located, within the affected chain of title of the affected property.

310 CMR 10.05(6)(g).

As to the grounds for an appeal, the wetlands regulations provide:

> The Appeal Notice shall include:
> . . . .
> v. a clear and concise statement of the alleged errors contained in the Reviewable Decision and how each alleged error is inconsistent with 310 CMR 10.00 and does not contribute to the protection

---

[3] The issues were identified by the Presiding Officer originally assigned to this matter. The Presiding Officer has the authority to identify the issues for adjudication. 310 CMR 1.01(5)(a). Although the Petitioner continued to disagree with framing of Issue 1 to the point of a lack of decorum, the Petitioner cannot claim that he was confined by it, as the record clearly shows otherwise.

of the interests identified in the Wetlands Protection Act, M.G.L. c. 131, s. 40, including references to the statutory or regulatory provisions the Party alleges have been violated by the Reviewable Decision, and the relief sought, including specific changes desired in the Reviewable Decision.

310 CMR 10.05(7)(j)2.b.v.[4]

**STANDARD OF REVIEW**

310 CMR 1.01(11)(f) allows any party to an administrative appeal to make a motion for summary decision. Summary decision is appropriate where the party seeking summary decision can "demonstrate that there is no genuine issue of material fact and that the party is entitled to a final decision as a matter of law." 310 CMR 1.01(11)(f). At the pre-screening conference, the Parties agreed that there were no disputed issues of material fact in this matter and that the case may be resolved on summary decision. A ruling granting or denying summary decision must be made on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Id. The Department filed a Motion for Summary Decision, which the Petitioner opposed. I found that there were no material disputed facts and this matter could be resolved through summary decision.

**ISSUE 1: Lack of Recordable Title**

The Petitioner stated that "there is nothing recorded in the chain of title of the affected property at the appropriate Registry of Deeds in the name of the Applicant." Petitioner's Motion to Clarify Errors of Fact and/or Deny Department of Environmental

---

[4]In addition, there is a provision for "assessment, monitoring, containment, mitigation, and remediation of, or other response to, a release or threat of release of oil and/or hazardous material in accordance with the provisions of 310 CMR 40.0000 and the following general conditions (although no such measure may be permitted which is designed in accordance with the provisions of 310 CMR 40.1020 solely to reduce contamination to a level lower than that which is needed to achieve "No Significant Risk" as defined in 310 CMR 40.0006(10)," where the issuing authority may permit a qualifying project that does not meet the performance standards. 310 CMR 10.24(7)(c)(6).

Protection's Motion for Summary Decision, at 1. The Petitioner argued that no work may be performed until a Final Order is recorded as required by the regulations. The federal government, which holds real property overseen by federal agencies, is not required by federal law to record property and generally need not comply with state or local laws, including those related to the recording of deeds. U.S. Const. Art VI, cl. 2. The U.S.C.G. filed a Notice of Intent for the work, however, and has submitted to the procedural and substantive requirements of the Wetlands Protection Act. The Department does not view recordation as a prerequisite to the issuance of an Order, but instead views a failure to record as a violation of the Order which is subject to the exercise of enforcement discretion.

While the U.S.C.G. did not file a motion or response, it did provide a summary of the status of real property overseen by federal agencies. *See* United States Coast Guard's Pre-Hearing Statement, para. 4. First, the U.S.C.G. states that it does not hold title to any property in its own name because it lacks statutory authority to hold title to real property. Id. Instead, title to all federal property, with minor exceptions not relevant here, is held in the name of the United States of America. Id. No federal law or regulation requires the United States to record deeds to its property, most federal land is not recorded, and federal property routinely lacks any instrument of conveyance in agency files. Id. Under principles of sovereign immunity, the federal government need not comply with state or local laws, including laws related to real property or recordation. Id. *See* U.S. Const. Art VI, cl. 2. Finally, the U.S.C.G. responds to the Petitioner's affidavit asserting that the United States has "no good marketable and insurable title" by stating that, even if true,

issues of marketability and insurability do not invalidate the title or prevent a quit claim transfer of property. Id.

The Petitioner states that "there is no recorded deed of the 10-acre Baker's Island light station on file at the Essex South District Registry of Deeds in Salem, Ma." Petitioner's Response to the Department of Environmental Protection's Response to the Petitioner's Response to the Motion for Summary Decision (hereinafter, "Petitioner's Response"). The Petitioner states that the U.S.C.G. identified the Sessions records from 1796, March 1803, pages 39 and 53, which show the property was awarded through eminent domain but states that no order of taking was recorded. Petitioner's Appeal at para. f.l. The Petitioner has provided an affidavit stating that the United States does not hold "good marketable and insurable" title because there is no "deed, order or other document memorializing a conveyance." *See* Affidavit of Steve Adelson, Esquire, unspecified date in 2006, attached to Petitioner's Appeal.[5] For purposes of the Wetlands Protection Act recordation requirement, however, the question is not whether the title is marketable or insurable. In the opinion submitted by the Petitioner, Land Court registration is necessary to confirm the boundaries of the property. The Petitioner has not asserted, however, that any boundary discrepancies are relevant to the proposed project.[6]

---

[5]The affidavit was apparently prepared for another legal proceeding, Baker's Island Lighthouse Preservation Society, Inc. and Robert Leavens v. U.S. Dept. of Interior, National Park Service, et. al,, 2006 U.S. Dist. Lexis 76408 (October 17, 2006), where the court did not review the claim that the United States did not possess marketable title to the light station and a reversion interest belonged to the Commonwealth of Massachusetts because it had not been raised before the federal administrative agencies that awarded Baker's Island Light to the Essex National Heritage Commission.

[6]The Petitioner asserts that the information stated on the Notice of Intent as "Property recorded at the Registry of Deeds for:" submitted by the U.S.C.G. ("Sessions Records July 1796, March 1803, April 1901; Essex South Registry of Deeds Book 1637 Pages 39, 53, 442 and 443,"), and repeated in the Order of Conditions and the Superseding Order of Conditions (Essex County Book 1637 and Sessions Records July 1796, March 1803, April 1901 Page 39. 53, 442 and 443) is inaccurate, but has not provided support for this assertion. The Petitioner also states that the U.S.C.G. recorded the Order of Conditions issued by the Salem Conservation Commission in the chain of title of the wrong property. Assuming this allegation is

The Petitioner's argument is quite straightforward. Essentially, the Petitioner argues that, according to the regulation, whoever holds title must have an instrument recorded at the Registry of Deeds where the Order of Conditions can be recorded within the chain of title. Petitioner's Response. *See* 310 CMR 10.05(6)(g). The Petitioner argues that the "Department is bound to uphold 310 CMR 10.05(6)(g)." Petitioner's Response. The Petitioner believes that the "Order is tied to the deed to provide assurances that the work will be completed pursuant to the Order (or otherwise there will be a title defect on the deed) and also provides a certain sense of security to parties of interest that the work will be done. This is the only "security" the Petitioner has that the work will be done in accordance with the Order and approved plans." *Id.*

The Petitioner misunderstands the purpose and effect of the recording of the Order. The Wetlands Protection Act requires recording of the Final Order prior to undertaking work. Orders issued under the Wetlands Protection Act, however, remain valid without recordation, and the Department or the Commission may enforce the recordation requirement in the same way that the Department has authority to enforce any other provisions of the Act or an Order.[7] *See* 310 CMR 10.08; 310 CMR 5.00. As the Department argues, an Order is fully enforceable, regardless of whether or not it has been

---

correct, it is not relevant to this proceeding as after an appeal the Superseding or Final Order makes the Order of Conditions without effect.

[7] The Act does not require immediate recordation, and a landowner may choose not to record the license when there is a delay in the commencement of work. The Act does not require an affirmative finding by the Department as to whom or how or whether the Order will be recorded. In some cases an applicant may differ from the landowner or an undisclosed property transfer will follow permitting so that an Order may be recorded by a subsequent purchaser who will then conduct the work. Thus, the Order runs with the land and the burden of compliance may shift. Although the regulations allow the issuing authority to record as an alternative to enforcement if work commences prior to recording, the Order remains valid prior to recordation. *See* 310 CNMR 10.05(6)(g).

8

recorded, against the entity to which it is issued, here the U.S.C.G.  Further, the Order itself states at General Condition 15:

> This Order of Conditions shall apply to any successor in interest or successor in control of the property subject to this Order and to any contractor or other person performing work conditioned by this Order.

Thus, regardless of whether the Order is recorded, any person or entity acquiring the property will be subject to the Order and the Department is fully able to conduct enforcement against the person or entity acquiring the property.[8]

The purpose of the recordation requirement is to provide notice of the existence of the Order, most importantly to prospective or subsequent purchasers.  Under the statute, persons purchasing, inheriting or otherwise acquiring property where work has been conducted in violation of the Act or an Order of Conditions must comply with the Order or restore the property, subject to a three year limitation from the date of the recording of the deed.  M.G.L. c. 131, § 40.  Thus, it is the Essex National Heritage Commission, the entity to which the property will be transferred, that is potentially most directly affected by the recordation requirement.

The wetlands permitting process does not rely on recordation for notice to interested persons, including the Petitioner as an abutter, but provides an alternate mechanism for public information about a project.  Every Order of Conditions requires the posting of a sign not less than two square feet or more than three square feet identifying the Department and specifying the file number, in this case "File Number 064-0479."  *See* General Condition 9.  The regulations also require the Conservation

---

[8]To the extent the Petitioner believes he is aggrieved due to an inability of the Department to enforce an Order that is not, or is improperly, recorded within the chain of title, this conviction is simply not accurate. Any assertion that he will be harmed by a failure to properly record the Order in the circumstances presented is speculative. *See* 310 CMR 10.04 Person Aggrieved.

Commission and the Department to keep on file copies of the plans to be made available to the public at reasonable hours. 310 CMR 10.05(6)(f). Thus, interested persons generally may obtain information about a project from the Commission or the Department using the file number for identification; interested persons, other than prospective purchasers, generally do not conduct title searches at registries of deeds for this information.

The Petitioner states that the "conditioning of the title is required to proceed. No recorded title, i.e., there can be no order of conditions." Petitioner's Motion to clarify Errors of Fact and/or Deny Department of Environmental Protection's Motion for Summary Decision. Again, the Order is recorded to provide notice to prospective and subsequent purchasers. It is not the title but the work that is subject to the Order. *See* M.G.L. c. 131, § 40; 310 CMR 10.05(6). An Order may be revoked or modified for failure to comply with the regulations, but otherwise remains valid.[9] See 310 CMR 10.05(6)(j). Thus, the Department has full authority to enforce all conditions in an Order regardless of whether or not the Order is recorded. The Department would not allow, as a defense to an enforcement action for violation of conditions, an argument that an Order is unenforceable because it is not recorded.

---

[9]Nothing in the statutory language suggests that an Order is void for failure to record. M.G.L. c. 91 waterways licenses contains a similar recordation requirement, "Work or change in use authorized under the license shall not commence until said license is recorded and the department has received notification of said recordation." M.G.L. c. 91, § 18. However, this text in M.G.L. c. 91 is preceded by the consequence of a failure to timely record: "said license shall be *void* unless, within sixty days after its date, it and the accompanying plan are recorded in the registry of deeds for the county or district where the work is to be performed." Id.(emphasis added). In contrast, Orders issued under the Wetlands Protection Act remain valid without recordation, and the Department or the Commission may enforce the recordation requirement in the same way that the Department has authority to enforce any other provisions of the Act or an Order.

Finally, nothing in the Act suggests that the Department has an affirmative obligation, as the Petitioner advocates, to withhold an Order of Conditions because of disputed ownership. Ownership issues arise at the time of application, and the Petitioner, in fact, first raised this question in his request for a Superseding Order of Conditions. Specifically, the Petitioner stated that the reference to Book 1637, pages 442 and 443 was incorrect and that the reference to "the Sessions records, July 1796, March 1803, pages 39 and 53 are not registered at the Essex South District Registry of Deeds and, even if they were, do not prove ownership." *See* Petitioner's Appeal for a Superseding Order of Conditions, dated January 26, 2009. The Department may engage in an inquiry into whether there is a "colorable claim of title" where there is a dispute as to property ownership, but the Department properly has refrained from adjudicating property law issues. Tindley v. DEQE, 10 Mass. App. Ct. 623 (1980).[10] Certainly the public operation of a light station at this site for more than two hundred years is sufficient for the Salem Conservation Commission and the Department to conclude that the U.S.C.G. is entitled to pursue this project on land held by the United States.[11] While the Petitioner submitted with his appeal for an adjudicatory hearing an affidavit from an attorney opining that there is no marketable and insurable title, nothing in the record provides any basis for a

---

[10] In Tindley, the Court noted that "colorable" appeared "to mean nothing more than disputed." Id. at n. 5. This question typically arises where there is a dispute as to whether an applicant has the authority to conduct the work. Matter of Town of Scituate – DPW, Docket No. 2000-064, Recommended Final Decision (January 17, 2002), Final Decision (May 8, 2003).

[11] Two lighthouses were constructed on the site and became operational in 1798, after Congress authorized funding in 1796. The original wooden lighthouses were replaced by stone structures in 1821, with only one lighthouse remaining after the other was retired in 1916. "Ownership of the land was vested in the United States in 1797." Baker's Island Lighthouse Preservation Society, Inc. and Robert Leavens v. U.S. Dept. of Interior, National Park Service, et. al., 2006 U.S. Dist. Lexis 76408 (October 17, 2006).

conclusion by the Department that the United States lacks proper claim of title. The Petitioner may adjudicate the title question in court. Id.

Finally, nothing in the Act suggests that the Department has an affirmative obligation, as the Petitioner advocates, to withhold an Order of Conditions where, in the circumstance of conveyance dating from the 1790s and continuous federal government use of the land, the requirement that the Order be recorded within the chain of title may pose some difficulties for the U.S.C.G. It is not uncommon for permits to be issued for work on publicly owned land or for public property not to have a deed with which an Order may be recorded.[12] Nonetheless, conservation commissions and the Department have issued Orders of Conditions. Although the Petitioner asserts that the Order issued by the Salem Conservation Commission was improperly recorded, the Department is correct that the appeal of the local Order rendered it moot.[13] Thus, the question of whether and how the U.S.C.G. records the Order remains to be seen, as is the case with any other wetlands permittee. I note that, in this situation, the concern intended to be addressed by the recording requirement, notice to prospective or subsequent purchasers,

---

[12]State agencies conducting work on Commonwealth land are generally not exempt from the Act, and thus, questions as to title have arisen more frequently in Department appeals with Commonwealth land than federal land. In fact, any time a project involves the construction of a pier below mean low water or work in a Great Pond the land itself generally is held by the Commonwealth where there is no deed. The Department has no expectation that the Order as to the portion of the property that will be constructed or conducted on Commonwealth land will be recorded for the simple reason that there is no chain of title. This issue arose at an earlier stage of the permitting process in a case where a petitioner claimed that a town lacked authority to conduct work on a Great Pond where the Commonwealth was the landowner and there was no signature of the landowner on the Notice of Intent. Matter of Town of Scituate – DPW, Docket No. 2000-064, Final Decision (May 8, 2003). The regulation was subsequently revised to specify that where a project is on Commonwealth tidelands or a Great Ponds, authorization of the landowner is not required. 310 CMR 10.05(4)(a).

[13] The Petitioner states that there is a dispute of fact as to whether the Order has been recorded in accordance with 310 CMR 10.05(6)(g). Any factual dispute as to the recording of the local Order is irrelevant to this proceeding. I need make no factual findings as to the recording of the local Order.

is alleviated by the known identity of the recipient of the property, the Essex National Heritage Commission.[14]

To the extent this issue needs to be addressed at all, I offer two recommendations. First, I recommend that the Department provide a copy of the Final Order of Conditions with the Final Decision to the Petitioner and to the Essex National Heritage Commission, at the same time both the Final Decision and the original Final Order are sent to the U.S.C.G. Second, I recommend the addition of a condition to the Order requiring the U.S.C.G. to ensure that the Final Order and the Certificate of Compliance, assuming that the work is completed prior to conveyance, is referenced or recorded with the quit claim deed that will be created to memorialize the conveyance to the Essex National Heritage Commission.[15]

## ISSUE 2: Sufficiency of lead remediation under the Massachusetts Contingency Plan.

The Petitioner asserts that the Massachusetts Contingency Plan standard of 300 mg/kg should apply to this site. *See* Motion to Clarify Errors of fact and/or Deny

---

[14] I leave it to the U.S.C.G. and the General Services Administration the question of how to record the Order. I need not resolve the question of the extent of a waiver of sovereign immunity that might arise in the context of enforcement where title to land is at issue.

[15]Under the National Historic Lighthouse Preservation Act of 2000, the Administrator of the General Services Administration "shall convey, by quitclaim deed, without consideration, all right, title, and interest of the United States in and to the historic light station, subject to conditions . . . ." Public Law 106-335, amending 16 U.S.C. 470w, 470w-6 at Section 308(b)(3). I leave it to the U.S.C.G. and the General Services Administration the question of how to record the Order. Should the U.S.C.G. determine that recording with the land where the project is located is not possible, due to the lack of a deed at the Registry, it should notify the Department by letter prior to commencing work. Provided that the Final Order is recorded with the deed to be prepared by the General Services Administration at the time the property is transferred, meaning that full compliance may be delayed, the legislative intent of the recording requirement will be achieved. *See* Town of Lexington v. Town of Bedford, 378 Mass. 562, 570 (1979) ("A literal construction of statutory language will not be adopted when such a construction will lead to an absurd and unreasonable conclusion and the language to be construed "is fairly susceptible to a construction that would lead to a logical and sensible result,"" citing Bell v. Treasurer of Cambridge, 310 Mass. 484, 489 (1941)).

Department of Environmental Protection's Motion for Summary Decision, at 8. The U.S.C.G. explained in its Pre-Hearing Statement that the remediation at the site is conducted under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), and the state law does not strictly apply because the U.S.C.G. is the lead agency under CERCLA. The U.S.C.G. stated that both state and federal cleanup levels were considered, and the cleanup criteria were determined on risk analysis using the state MCP risk methodology. The results of the risk assessment would have allowed 450 mg/kg for lead as protective of human health for full-time residential use, but the U.S.C.G. is meeting the more conservative standard of 400 mg/kg specified in EPA cleanup standards. The Department argues that this issue may be dismissed as a matter of law because the Petitioner is raising a claim arising under M.G.L. c. 21E that cannot be adjudicated in this appeal of the wetlands permit. The Petitioner argues that the inclusion of a condition that the U.S.C.G. retain the services of a Licensed Site Professional, an individual employed under the auspices of M.G.L. c. 21E, allows the Petitioner to raise the issue of the cleanup standard in this appeal.

Under the wetlands regulations, a petitioner must identify how alleged errors are inconsistent with 310 CMR 10.00 and the interests of the Wetlands Protection Act. Accordingly, the scope of issues in a wetlands appeal is limited to issues arising within the four corners of the wetlands program regulations and statute. 310 CMR 10.05(6)(g). *See* Matter of Ann Tinnirella, Docket No. 2003-142, Recommended Final Decision (March 22, 2005). It is commonplace for projects to be subject to other applicable local, state, and federal permitting programs, but an aggrieved person must bring any challenges under each program.

14

References to another Department program in a wetlands permit do not open the door to challenges arising under another program in a wetlands appeal. Indeed, references to other regulatory programs are found throughout the wetlands regulations, including the state and federal Clean Water Acts (310 CMR 10.03(4)), Title 5 governing septic systems (310 CMR 10.03(3)), herbicide application on rights of way regulated by the Department of Agriculture (310 CMR 10.03(6)), the Massachusetts Environmental Policy Act (310 CMR 10.07), solid waste regulations for landfill closures (310 CMR 10.24(7)(c)4), federal aviation regulations (310 CMR 10.24(7)(c)5, and an explicit provision for hazardous waste remediation projects (310 CMR 10.24(7)(c)6. The coastal regulations specifically state that a "proposed project must comply with all applicable requirements of other federal, state and local statute and by-laws, in addition to meeting the requirements of 310 CMR 10.00." 310 CMR 10.24(4)(a). In some cases, there may be appeal rights under another regulatory program, and an aggrieved person or other entity with standing could pursue an appeal under more than one regulatory program, with the possibility that the appeals would be consolidated. *See* 310 CMR 1.01 (6)(g).

As to M.G.L. c. 21 E, the Petitioner has identified no regulatory provision that would allow a challenge to the cleanup standard for this site. Indeed, the regulations do not appear to provide any appeal rights to determinations made for adequately regulated sites. *See* 310 CMR 40.0110-40.0111; 310 CMR 40.0050. The Petitioner states that the U.S.C.G. pointed to 310 CMR 40.0317(8a) related to releases from original application of lead-based paint, and the Petitioner points to 310 CMR 40.370 where releases not requiring notification must still conform to other applicable law, but no appeal rights arise from those provisions. The inclusion of a condition related to the supervision of

work near wetlands cannot be interpreted to allow an appeal of cleanup standards under any circumstances, but particularly where there is no appeal of those standards under the regulations under which the Department's determination is made.

The interface of other regulatory programs, such as M.G.L. c. 21E, and the Wetlands Protection Act has arisen in prior cases. Any authority the Department may have over the project under M.G.L. c. 21E cannot be adjudicated in this appeal arising under the Wetlands Protection Act, as quite clearly the Department is not required by statute or regulation to implement its M.G.L. c. 21E program through its authority under the Act. *See* Matter of Town of Hopkinton, Docket No. WET-2008-010, Recommended Final Decision (May 1, 2008), adopted by Final Decision (May 30, 2008), Morrison v. Massachusetts Department of Environmental Protection, Sup. Ct. C. A. No. MICV2008-02876-B (September 3, 2009). Similarly, the Department will not adjudicate issues related to compliance with the Massachusetts Environmental Policy Act in its Wetlands appeals. *See* Matter of Ikea Property, Inc., Docket No. 2004-669, Ruling on Motion to Dismiss (March 10, 2005); Matter of Building Center, Inc., Docket No. 2002-230, Recommended Final Decision (March 19, 2003), adopted by Final Decision (April 8, 2004). Thus, this claim is properly dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

For the reasons stated, I conclude that a Final Order may be issued to the U.S.C.G. despite the recording issues asserted by the Petitioner and that the provisions related to the standard for lead remediation that may not be adjudicated in this forum. I recommend that copies of the Final Order be sent to the Petitioner and the Essex National

Heritage Commission.   I also recommend that a condition be added to the Order

requiring the U.S.C.G. to ensure that the Order is recorded with the quit claim deed to be

prepared by the General Services Administration prior to transfer of the property.[16]

Finally, I recommend that the conditions the parties agreed upon related to soil sampling

and a 90 day time limit on a temporary landing below high tide be added to the Final

Order.

*Pamela D Harvey*

Pamela D. Harvey
Presiding Officer

## NOTICE- RECOMMENDED FINAL DECISION

This decision is a Recommended Final Decision of the Presiding Officer.  It has

been transmitted to the Commissioner for her Final Decision in this matter.  This decision

is therefore not a Final Decision subject to reconsideration under 310 CMR 1.01(14)(e),

and may not be appealed to Superior Court pursuant to M.G.L. c. 30A.  The

Commissioner's Final Decision is subject to rights of reconsideration and court appeal

and will contain a notice to that effect.

Because this matter has now been transmitted to the Commissioner, no party shall

file a motion to renew or reargue this Recommended Final Decision or any part of it, and

no party shall communicate with the Commissioner's office regarding this decision

unless the Commissioner, in her sole discretion, directs otherwise.

---

[16]The Department may choose to provide a second original Final Order for this purpose.

## SERVICE LIST

In The Matter Of:                                    U.S. Coast Guard/Rachel Morino
Docket No.    WET-2009-041                           File No. 064-0479
                                                     Salem

Representative                                       Party

United States Coast Guard                            APPLICANTS
c/o Ms. Rachel Morino                                U.S. Coast Guard
300 Metro Center Boulevard
Warwick, RI 02886
rachelmarino@verizon.net
Rachel.marino@uscg.mil

Robert T. Leavens                                    PETITIONERS
385 Magnolia Ave                                     Robert Leavens
Gloucester, MA 01930
ellatory@verizon.net

Rebecca Cutting, Esq.                                DEPARTMENT
MassDEP/Office of General Counsel
One Winter Street
Boston, MA 02108
rebecca.cutting@state.ma.us

Salem Conservation Commission                        CONSERVATION COMMISSION
c/o Cary Duques                                      Salem Conservation Commission
120 Washington Street
Salem, MA 01970
cduques@salem.com

CC:
Rachel Freed
MassDEP/Bureau of Resource Protection                DEPARTMENT
205B Lowell Street
Wilmington, MA 01887
Rachel.freed@state.ma.us

Nancy White
MassDEP/Bureau of Resource Protection                DEPARTMENT
205B Lowell Street
Wilmington, MA 01887
Nancy.M.White@state.ma.us

Date: March 23, 2010

# Exhibit G

COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENERGY & ENVIRONMENTAL AFFAIRS
DEPARTMENT OF ENVIRONMENTAL PROTECTION
ONE WINTER STREET, BOSTON, MA 02108 617-292-5500

April 7, 2010

In the Matter of
United States Coast Guard
Baker's Island Light

Docket No. WET-2009-041
File No. 064-0479
Salem

## FINAL DECISION

I adopt the Recommended Final Decision of the Presiding Officer. The parties to this proceeding are notified of their right to file a motion for reconsideration of this Decision, pursuant to 310 CMR 1.01(14)(e). The motion must be filed with the Case Administrator and served on all parties within seven business days of the postmark date of this Decision. A person who has the right to seek judicial review may appeal this Decision to the Superior Court pursuant to M.G.L. c. 30A, §14(1). The complaint must be filed in the Court within thirty days of receipt of this Decision.

Laurie Burt
Commissioner

This information is available in alternate format. Call Donald M. Gomes, ADA Coordinator at 617-556-1057. TDD Service - 1-800-298-2207.

MassDEP on the World Wide Web: http://www.mass.gov/dep
Printed on Recycled Paper

## SERVICE LIST

In The Matter Of:        U.S. Coast Guard/Rachel Morino
Docket No.  WET-2009-041     File No. 064-0479
                Salem

Representative          Party

United States Coast Guard     APPLICANTS
c/o Ms. Rachel Morino       U.S. Coast Guard
300 Metro Center Boulevard
Warwick, RI 02886
rachelmarino@verizon.net
Rachel.marino@uscg.mll

Robert T. Leavens        PETITIONERS
385 Magnolia Ave        Robert Leavens
Gloucester, MA 01930
ellatory@verizon.net

Rebecca Cutting, Esq.       DEPARTMENT
MassDEP/Office of General Counsel
One Winter Street
Boston, MA 02108
rebecca.cutting@state.ma.us

Salem Conservation Commission   CONSERVATION COMMISSION
c/o Cary Duques         Salem Conservation Commission
120 Washington Street
Salem, MA 01970
cduques@salem.com

CC:
Rachel Freed
MassDEP/Bureau of Resource Protection  DEPARTMENT
205B Lowell Street
Wilmington, MA 01887
Rachel.freed@state.ma.us

Nancy White
MassDEP/Bureau of Resource Protection  DEPARTMENT
205B Lowell Street
Wilmington, MA 01887
Nancy.M.White@state.ma.us

Date: April 7, 2010